## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CAPELLA PHOTONICS, INC.,
        Plaintiff,

v.

CISCO SYSTEMS, INC.,                     Case No. 14-20529-CIV-SEITZ ✓
        Defendant.

_____

v.

CIENA CORPORATION,                Case No. 14-20530-CIV-SEITZ
        Defendant.

_____

v.

FUJITSU NETWORK                    Case No. 14-20531-CIV-SEITZ
COMMUNICATIONS, INC.,
        Defendant.

_____

v.

TELLABS OPERATIONS, INC., and      Case No. 14-60350-CIV-SEITZ
CORIANT (USA) INC.,
        Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO TRANSFER

     THIS MATTER is before the Court on the motions to transfer venue to the Northern
District of California filed by the five Defendants in the above-styled actions: Cisco Systems,
Inc., Ciena Corporation, Fujitsu Network Communications, Inc., Tellabs Operations, Inc., and
Coriant (USA) Inc. (collectively "Defendants"). [DE-19 (14-20529); DE-43 (14-20530); DE-
25 (14-20531); DE-63 (14-60350)].[1] Because Defendants have satisfied their burden to show
that the factual circumstances strongly favor transfer to the Northern District of California
pursuant to 28 U.S.C. § 1404(a), the Court will grant Defendants' motions to transfer.

---

[1]     Because these motions focus on essentially the same factual and legal issues, the Court
will address them together, noting any relevant distinctions as they arise.

# I.    Procedural and Factual Background

## A. The Patents at Issue and Procedural History

The Complaint alleges that Plaintiff is the owner of the patents-in-suit: United States Patent No. RE42,368 (the "'368 patent") and United States Patent No. RE42,678 (the "'678 patent").[2] The '368 patent was invented by Tai Chen, Jeffrey P. Wilde, and Joseph E. Davis and was issued on May 17, 2011. The '678 patent was invented by Jeffrey P. Wilde and Joseph E. Davis and was issued on September 6, 2011. Mr. Wilde and Mr. Davis currently reside in northern California, while Mr. Chen's location is unknown. (Hr'g Tr. 140:20–21, July 10, 2014.) The prosecuting attorneys for the two patents, Barry Young, David Alberti, and Joshua Isenberg, are also located in northern California. (Cheung Decl. Exs. H, J, L [DE-43-9, 43-11, 43-13 (14-20530)]). The patents-in-suit have both been assigned to Plaintiff Capella Photonics, Inc. ("Capella"), whose principal office is in northern California.

Both patents-in-suit relate to fiber-optic communication systems, which transmit data over optical fibers in the form of light signals. Multiple signals, each using a different wavelength of light, can travel along a single optical fiber simultaneously. Specifically, the patents-in-suit are for reconfigurable optical add-drop multiplexers ("ROADM"s), which are devices that can separate and direct each wavelength of light into separate channels. A major component of the patents-in-suit is a wavelength selective switch ("WSS")[3], which uses an array of micromirrors to route light signals between optical fibers. According to their summaries, distinctive features of the patents-in-suit include the micromirrors' ability to pivot along two axes and the ROADM's capacity for power control.

---

[2]      These patents are a reissue of No. 6,879,750 and No. 6,625,346, respectively.

[3]      The WSS is also known as a "wavelength-separating router" or a "wavelength cross-connect switch."

On February 7, 2014, Plaintiff filed separate suits against Defendants Cisco Systems, Inc. ("Cisco"), Ciena Corporation ("Ciena"), Fujitsu Network Communications, Inc. ("FNC"), and Tellabs, Inc. ("Tellabs") for infringement of both patents-in-suit.[4] Plaintiff alleges that Defendants "infringed and continue[] to directly infringe . . . by making, using, selling, offering to sell and/or importing optical ROADM products that incorporate a wavelength selective switch." (*See, e.g.*, Second Am. Compl. [DE-82 (14-20530)] at 5 ¶ 23.)

On April 4, 2014, Cisco moved to transfer to the Northern District of California pursuant to section 1404(a).[5] On April 29, 2014, Capella amended its complaint against Tellabs to add Defendants Tellabs Operations, Inc. ("Tellabs Ops"), Columbus Networks USA, Inc., and Coriant (USA) Inc. ("Coriant").[6] On May 1, 2014, Capella amended its complaint against Ciena to add Defendant Telefonica, S.A.

On July 10, 2014, the Court held a joint scheduling and planning conference. Following the conference, Tellabs, Inc. and Telefonica, S.A. were dismissed, Telefonica International Wholesale Services USA, Inc. was joined, and Columbus Networks USA, Inc. and Telefonica International Wholesale Services USA, Inc. were severed.[7] [See DE-74 (14-20529); DE-80, 85 (14-20530); DE-63 (14-20531); DE-71 (14-60350)].

---

[4]    Because the same patents and claims of infringement are at issue in each case, they were all assigned to the undersigned in order to promote judicial efficiency and reduce costs. With the parties' consent, the cases have since been consolidated for pretrial purposes. [*See* DE-76 (14-20529); DE-86 (14-20530); DE-65 (14-20531); DE-75 (14-60350)].

[5]    FNC and Ciena moved to transfer on April 15 and April 25, 2014, respectively.

[6]    Coriant and Tellabs Ops moved to transfer on June 20, 2014.

[7]    Columbus Networks USA, Inc. and Telefonica International Wholesale Services USA, Inc. were severed because they are Florida-based customers of Coriant and Ciena and offer no meaningful contribution to the patent dispute. Capella's cases against them are stayed pending the resolution of the above-styled actions.

## B. The Parties

### 1. *Plaintiff Capella*

Capella is a Delaware corporation with a principal place of business in San Jose, California. Capella designed, developed, produced, and sold switching devices for optical transmission networks, including the WSS, until it sold its manufacturing operations two years ago and ceased doing business. Thus, Capella is currently a nonpracticing entity. Capella has no offices or operations in Florida, and its senior management and lead counsel in this matter all reside in the Northern District of California.

### 2. *Defendant Cisco*, Case No. 14-20529

Cisco is a California corporation with its principal place of business in San Jose, California. Forty-five percent of its U.S. employees work in its eight offices in the Northern District of California. (Haase Decl. [DE-19-4 (14-20529)] ¶¶ 7, 9.) Cisco has two offices in Florida, but neither office has any involvement with the accused products. (*Id.* ¶¶ 11–13.) The majority of the Cisco employees involved in developing and marketing the accused products work in Cisco's San Jose offices. (Johnson Decl. [DE-19-1 (14-20529)] ¶¶ 5, 12, 14.)

Cisco purchases the WSS devices incorporated into its accused products from three suppliers: JDS Uniphase Corporation ("JDSU"), Finisar Corporation ("Finisar"), and Oclaro Inc. ("Oclaro"). (*Id.* ¶¶ 8–10.) Because Cisco does not manufacture the WSS devices, it has limited knowledge of the design and development of the switch. The witnesses and documents from the WSS suppliers are important to Cisco's defenses of non-infringement and invalidity.

### 3. *Defendant Ciena*, Case No. 14-20530

Ciena is a Delaware corporation with its principal place of business in Hanover, Maryland. While Ciena does have thirteen employees in Doral, Florida, none of them have any

involvement with the design or development of the accused products. (Rothenstein Decl. [DE-43-24 (14-20530)] ¶ 11.) Moreover, Ciena's largest U.S.-based research and development facility is located in San Jose, California. (*Id.* ¶ 8.)

Like Cisco, Ciena purchases the WSS devices incorporated into its accused products from JDSU, Finisar, and Oclaro. (*Id.* ¶ 4.) Because Ciena does not manufacture the WSS devices, it, too, has limited knowledge of the design and development of the switch. Accordingly, witnesses and documents from the WSS suppliers are important to Ciena's defenses of non-infringement and invalidity.

### 4. *Defendant FNC*, Case No. 14-20531

FNC is a California corporation with its principal place of business in Richardson, Texas. FNC has no offices in Florida but does lease one cubicle[8] from an outside party in Jacksonville, Florida. (Galou Decl. [DE-27 (14-20531)] ¶¶ 13–15.) FNC has a place of business in Sunnyvale, California, which employs roughly 86 people, including engineers involved in the design, development, and testing of the accused products. (*Id.* ¶ 9.)

Like Cisco and Ciena, FNC purchases the WSS devices incorporated into its accused products from JDSU, Finisar, and Oclaro. (*Id.* ¶¶ 5–7.) Because FNC does not manufacture the WSS devices, it, too, has limited knowledge of the design, development, and function of the switch. The witnesses and documents from the WSS suppliers are important to FNC's defenses of non-infringement and invalidity.

### 5. *Defendants Tellabs Ops and Coriant*, Case No. 14-60350

Tellabs Ops is a Delaware corporation with its principal place of business in Naperville, Illinois. Tellabs Ops has a corporate office in Santa Clara, California. (Wang Decl. [DE-63-3

---

[8]      The employee who occupies that cubicle, however, is not involved in the design, development, manufacture, or analysis of the accused product.

(14-60350)] ¶¶ 9–10.) While Tellabs Ops previously leased two offices in Florida, it has not done so since 2011. (*Id.* ¶ 15.)

Coriant is a Delaware corporation with its principal place of business in Bridgewater, New Jersey. Coriant has no offices in Florida or California but does business in both. (Benson Decl. [DE-63-4 (14-60350)] ¶¶ 9, 11.)

Similar to the other Defendants, Tellabs Ops and Coriant do not manufacture the WSS devices that are incorporated into their accused devices. Tellabs Ops purchases the WSS devices it uses in the accused products from Finisar, Oclaro, and Oplink Corporation ("Oplink"). (Wang Decl. ¶ 6.) Similarly, Coriant purchases the WSS devices that are incorporated into its accused products from JDSU and Finisar. (Benson Decl. ¶ 6.) Because Tellabs Ops and Coriant do not manufacture the WSS devices, they have limited knowledge of the design and development of the switch. The witnesses from the WSS manufacturers are important to Tellabs Ops and Coriant's defenses of non-infringement and invalidity.

### 6. *WSS Suppliers JDSU, Finisar, Oclaro, and Oplink*

JDSU designs, develops, and supplies many of the WSS devices that are incorporated into the accused products. (Retort Decl. [DE-63-5 (14-60350)] ¶ 5.)[9] Although its WSS devices are manufactured outside the United States, JDSU is headquartered in the Milpitas, California. (*Id.* ¶ 2, 11.) Its Communications and Commercial Optical Products ("CCOP") Business Segment is responsible for the design, development, manufacture, marketing, and sale of WSS devices. (*Id.* ¶ 7.) While the majority of the initial design and development was

---

[9] All Defendants share the same WSS suppliers, with the exception of Coriant who also uses Oplink. In support of their motions to transfer, Defendants filed declarations by certain employees of these suppliers that are essentially the same in each case. (*Compare, e.g.*, Retort Decl. *with* [DE-19-5 (14-20529)].) Accordingly, the Court will refer to the declarations filed in Case No. 14-60350.

performed in Ottawa, Canada, JDSU's CCOP Business Segment is now based in the Northern District of California. (*Id.* ¶ 7, 10.) JDSU has named three employees who oversee WSS design and development, all of whom reside in the Northern District of California. (*See id.*; Mumm Decl. [DE-63-6 (14-60350)]; Kim Decl. [DE-63-7 (14-60350)].)

Finisar, Oclaro, and Oplink also design, develop, and supply some of the WSS devices that are incorporated into the accused products. Finisar is headquartered in Sunnyvale, California; Oclaro in San Jose, California; and Oplink in Fremont, California. (Wang Decl. [DE-63-3 (14-60350)] ¶¶ 6–7.) The record contains limited evidence regarding the design, development, and manufacturing activities of these WSS suppliers.

## II.    Legal Standard for § 1404(a) Transfers

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of transfer under this section is to avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money. Defendants moving for transfer bear the burden of proving that the plaintiff's choice of forum "is clearly outweighed by other considerations." *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981).

A court considers two questions to determine whether transferring venue is appropriate. First, is the transferee forum one in which the action might have been brought? Second, upon balancing the private and public factors, is transfer justified? *Mason v. SmithKline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2011). The factors considered in analyzing the second question include:

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Wi-LAN USA, Inc. v. Apple Inc.*, No. 12-24318, 2013 WL 1343535, at *2 (S.D. Fla. Apr. 2, 2013) (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

**A. Whether the Claims Might Have Been Brought in the Northern District of California**

There is no dispute that this action could have been brought in the Northern District of California. Moreover, all Defendants have consented to suit there.

**B. Whether Transfer to the Northern District of California is More Convenient to All Parties and Witnesses**

*1. Convenience of Witnesses*

The convenience of the witnesses is probably the single most important factor in a transfer analysis. A district court should assess the relevance and materiality of the information each witness may provide, but a defendant need not specify exactly what testimony each witness might offer or otherwise identify "key witnesses." *In re Genentech, Inc.*, 566 F.3d 1338, 1343–44 (Fed. Cir. 2009).

Defendants have named potential witnesses with knowledge of the WSS devices of the accused products and have provided explanations of the relevant testimony. The named JDSU employees responsible for the design, development, and testing of the WSS devices reside in the Northern District of California, as do the inventors and initial prosecuting attorneys of the patents-in-suit. The other WSS suppliers are also headquartered within the Northern District of California and so are likely to have witnesses with relevant information there. Accordingly,

Defendants assert the majority of potential witnesses with relevant knowledge of the WSS devices are located in the Northern District of California.

In contrast, none of the parties have identified any witnesses in Florida with relevant information. Because many potential witnesses appear to be located in the Northern District of California but none in Florida, this factor strongly favors transfer.

### 2. *Ease of Access to Sources of Proof*

In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. *In re Genentech*, 566 F.3d at 1345. Here, the relevant documentary evidence is scattered in different locations where Defendants are headquartered, but none is located in the Southern District of Florida. On the other hand, many Defendants have offices in the Northern District of California, and the WSS suppliers are headquartered there.

However, as Capella suggests, document production is likely to be conducted electronically, and there is no indication that this case will require physical evidence that would be cumbersome to transport. *See Wi-LAN USA,* 2013 WL 1343535, at *3. As such, the access-to-evidence factor is neutral.

### 3. *The Convenience of the Parties*

Where a transfer simply shifts the inconvenience from one party to another, a plaintiff's choice of forum should remain undisturbed. Capella's choice of forum in the Southern District of Florida indicates that it is convenient for it. However, transfer to the Northern District of California will not inconvenience Capella, as its corporate headquarters and counsel are located there.

Defendants, on the other hand, all appear to be inconvenienced by the Southern District of Florida because none have offices within the state relating to the accused products. In contrast, while Defendants may not all be headquartered in California, many have offices

- 9 -

located in the Northern District of California, and all have consented to venue there. Accordingly, the convenience-of-the-parties factor weighs in favor of transfer.

### 4. Locus of Operative Fact

The center of gravity for a patent infringement case is generally where the accused product was designed and developed. *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011). Capella's pleadings and infringement contentions emphasize the WSS, a component of the ROADM, making it clear that the design and development of WSS devices and their use in the accused ROADMs will be central operative facts in this case. (*See, e.g.*, Second Am. Compl. [DE-82 (14-20530)] at 5 ¶ 23; Prelim. Infringement Contentions [DE-25 (14-20529)] at 2.) While the WSS devices were not fully designed and developed in the Northern District of California, the JDSU headquarters, CCOP business segment, and engineers currently responsible for the design and development of the devices are located there. In contrast, neither the design nor the development of the WSS devices took place in Florida.

Capella argues that Defendants supply ROADMs for optical networks deployed in Florida. However, Defendants offer the accused products for sale nationwide, which does not give rise to a substantial interest in any specific venue. *See In re Acer America Corp.,* 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Accordingly, the locus of operative fact is in the Northern District of California, not Florida. This factor favors transfer.

### 5. The Availability of Process to Compel the Attendance of Unwilling Witnesses

Courts generally transfer cases when important witnesses could be subpoenaed in the transferee forum but not in the original forum. *Wi-LAN USA,* 2013 WL 1343535, at *4. Many of the potential witnesses are third party witnesses in California, whose attendance the

Northern District of California can compel with its Rule 45 subpoena power. The Southern

District of Florida, however, cannot enforce compulsory process over these potential witnesses

because none reside in Florida. Although Capella argues that depositions of these witnesses

could be used at trial, videotaped depositions are poor substitutes for live witnesses, especially

in complex patent cases where the jurors may have follow-up questions after redirect

examination. Accordingly, this factor weighs in favor of transfer.

### 6. *The Relative Means of the Parties*

Capella's principal argument is that it is a small company that needs to protect its

patents in a forum that is faster than the Northern District of California. However, Capella is

only small because it decided to sell its assets, and the difference in time for prosecuting patent

cases between the two districts is at most six months, which can hardly be considered

problematic. Accordingly, this factor is at most neutral.

### 7. *A Forum's Familiarity with the Governing Law*

Both districts are familiar with federal patent law. This factor is neutral.

### 8. *Plaintiff's Choice of Forum*

Generally, the plaintiff's choice of forum is given considerable deference. *Robinson v.
Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (plaintiff's choice of forum should

not be disturbed unless it is clearly outweighed by other considerations). However, only

minimal deference is required where (a) a plaintiff has chosen a forum that is not its home

forum or (b) the operative facts underlying the cause of action did not occur within the forum

the plaintiff has chosen. *Cellularvision Techs. & Tellecomm., L.P. v. Alltel Corp.*, 508 F. Supp.

2d 1186, 1889 (S.D. Fla. 2007); *Wi-LAN USA*, 2013 WL 1343535, at *5.

Capella is a Delaware corporation with its principal place of business in San Jose, California. Its senior management and lead counsel all reside in the Northern District of California with no offices or operations located in Florida. As previously discussed, the locus of operative fact is in the Northern District of California. Because the Southern District of Florida is neither Capella's home forum nor the locus of operative fact, Capella's choice is entitled to minimal deference, and this factor weighs only weakly against transfer.

### 9. *Trial Efficiency and the Interests of Justice*

The Court must also take into consideration the public-interest considerations of systemic integrity and fairness, such as judicial efficiency and the forum state's connection to the dispute. *See Motorola Mobility*, 804 F. Supp. 2d at 1278.

The Northern District of California's local interest is greater than the Southern District of Florida's interest because the majority of the parties and third parties have either headquarters or major offices located within the Northern District of California and all conduct business there. In contrast, as discussed above, none of the parties have significant contacts with the Southern District of Florida and all witnesses reside outside of Florida.

As for judicial efficiency, these cases have been consolidated for pretrial case management because they involve the same patents and substantially similar issues of infringement, and they should remain consolidated in either forum. While Capella may be correct in asserting that the Southern District of Florida's docket is minimally less congested, this consideration is outweighed by this district's lack of connection to the dispute. *See In re Genentech, Inc.*, 566 F.3d at 1347 (time to trial may be a consideration in the transfer analysis, but should not outweigh several other relevant factors pointing the other way). Accordingly, on balance, the interests-of-justice factor favors transfer.

### III.    Conclusion

When all of the relevant factors are considered, the Court finds that Defendants have met their burden of showing that transfer of these four cases to the Northern District of California is appropriate, particularly given the limited deference owed Capella's choice of a venue which is neither its residence nor the locus of operative fact. Accordingly, it is

ORDERED that

1)    In Capella Photonics, Inc. v. Cisco Sys., Inc., Case No. 14-20529:

    a.  Cisco's Motion to Transfer Venue [DE-19] is GRANTED.

2)    In Capella Photonics, Inc. v. Ciena Corp., et al., Case No. 14-20530:

    a.  Ciena's Motion to Transfer Venue [DE-43] is GRANTED.

3)    In Capella Photonics, Inc. v. Fujitsu Network Commc'ns, Case No. 14-20531:

    a.  FNC's Motion to Transfer Venue [DE-25] is GRANTED.

4)    In Capella Photonics, Inc. v. Tellabs, Inc., et al., Case No. 14-60350:

    a.  Tellabs Ops and Coriant's Motion to Transfer Venue [DE-63] is GRANTED.

5)    The Clerk shall TRANSFER the four above-styled actions to the United States District Court for the Northern District of California. The notice of transfer shall note that the cases have been consolidated for pretrial purposes.

DONE and ORDERED in Miami, Florida, this _23rd_ day of July, 2014.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record