Pages 1 - 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, District Judge

CAPELLA PHOTONICS,                    )
                                      )
          Plaintiff,                  )
                                      )
VS.                                   )    NO. C14-3348
                                      )        C14-3349
CISCO, FUJITSU, TELLABS, & CIENA,     )        C14-3350
                                      )        C14-3351
          Defendants.                 )
_____)

                         SAN FRANCISCO, CALIFORNIA
                         THURSDAY, SEPTEMBER 18, 2014

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING (FTR TIME: 9:36 A.M. – 10:18 A.M.)**

**APPEARANCES:**

For Plaintiff:          Manatt Phelps and Philips
                        1001 Page Mill Road, Building 2
                        Palo Alto, CA 94304
                   BY:  **ROBERT BECKER, ATTORNEY AT LAW**

For Plaintiff:          White and Case
                        5 Palo Alto Square
                        3000 El Camino Real
                        Palo Alto, CA 94306
                   BY:  **SUSANNA CHENETTE, ATTORNEY AT LAW**

For Defendant:          Cooley Godward Kronish LLP
                        380 Interlocken Crescent, Suite 900
                        Broomfield, CO 80021-8023
                   BY:  **WAYNE STACY, ATTORNEY AT LAW**

For Defendant:          Milbank Tweed Hadley & McCloy
                        1 Chase Manhattan Plaza
                        New York, NY 10005-1413
                   BY:  **CHRIS CHALSEN, ATTORNEY AT LAW**

**APPEARANCES:**

For Defendant:          Pillsbury Winthrop Shaw Pittman LLP
                        Post Office Box 2824
                        San Francisco, CA 94126
                   BY:  **COLIN KEMP, ATTORNEY AT LAW**

For Defendant:          Banner & Witcoff, Ltd.
                        10 South Wacker Drive, Suite 3000
                        Chicago, IL 60606
                   BY:  **THOMAS PRATT, ATTORNEY AT LAW**

For Defendant:          Latham and Watkins LLP
                        885 Third Avenue
                        New York, NY 10022
                   BY:  **CLEMENT NAPLES, ATTORNEY AT LAW**

Transcribed:                  Carrie E. McKee-Parks
                              Transcriber 510-637-9897
                              McKee-Parks65@att.net

Thursday, September 18, 2014                         9:36 a.m.

P R O C E E D I N G S

---oOo---

THE CLERK:  Calling case C143348, Capella v. Cisco; C143349, Capella v. Fujitsu; C143350, Capella v. Tellabs; and C143351, Capella v. Ciena.

Counsel, please come to the podium and state your name for the record.  And please, state your name before you speak.

MR. BECKER:  Morning, your Honor.  Robert Becker with Manatt Phelps and Philips.  Susanna Chenette is with me, my associate; and also Chris Lucas, the client representative and we represent Capella.

THE COURT:  Thank you, Mr. Becker.

MR. STACY:  Morning, your Honor.  Wayne Stacy from Cooley for Cisco.

THE COURT:  All right.  Thank you, Mr. Stacy.

MR. CHALSEN:  Morning, your Honor.  My name is Chris Chalsen.  I'm with Milbank Tweed Hadley & McCloy representing Fujitsu Network Communications.

THE COURT:  All right.  Thank you, Mr. Chalsen.

MR. KEMP:  Good morning.  Colin Kemp of Pillsbury on behalf of Tellabs and Coriant.

THE COURT:  All right.  Thank you, Mr. Kemp.

MR. PRATT:  Morning, your Honor.  Tom Pratt on behalf of Banner & Witcoff behalf of Tellabs and Coriant.

THE COURT:  Morning, Mr. Pratt.

MR. NAPLES:  Morning, your Honor.  Clement Naples from Latham and Watkins for Ciena.

THE COURT:  All right.  Thank you, Mr. Naples.  Okay.  Well, here you are in California as opposed to Florida.  And I see there's some history to this case.

One question I have is it's referenced here to FNC having consented to consolidation for pretrial purposes.  Has there been some formal consolation of order in this case?

MR. CHALSEN:  Your Honor, if I may.  This is Chris Chalsen representing Fujitsu Network Communications.

THE COURT:  Yeah.

MR. CHALSEN:  But I understand that all the parties, I think, are on the same page on the consolidation issue.  Judge Seitz in Florida proposed that there be a consolidation and she wanted to hear the parties' positions on that and the parties entered into a stipulation, as I recall, and consented to consolidation.

The defendant's conditioned that there being consolidation only for pretrial purposes that each defendant would be able to maintain its own separate defenses and also to have separate proceedings on any issues that were unique to the defendants.  And we also wanted to maintain our ability to have separate discovery on the issues.  And it was all memorialized in the form of an order and I think that the plaintiffs --

THE COURT:  Do you know what docket number that is? Does that show up on our docket?

MR. CHALSEN:  I think I might have a copy of it here, your Honor.

THE COURT:  Okay.  Is that 76?  I see order consolidating case for pretrial purposes that Judge Seitz signed dated July 18th; does that sound about right?

MR. CHALSEN:  Your Honor, yes.  It's -- was entered on the Florida docket on 7-21 -- July 21st -- order consolidating cases for pretrial purposes.

THE COURT:  All right.

MR. CHALSEN:  Docket number 65.

THE COURT:  65.

MR. CHALSEN:  It was 65 in the civil action 20531.

THE COURT:  All right.  Well --

MR. CHALSEN:  But we only have -- I have a copy of the order that was entered in the case against Fujitsu Network Communications, but I don't have a copy of the order in the other cases.  I think a similar order was entered --

THE COURT:  I think so.  I have, for instance, the Cisco docket and it looks like number 76, but I just wanted to make sure that that's been resolved and that's -- that specifies what it is that's being consolidated precisely and what each party is reserving.  And I take it that this sets forth -- this order sets that out.

MR. CHALSEN:  Yes, that's my understanding, Judge.

THE COURT:  Okay.  Good.  Thank you.

All right.  Let me ask; there's a motion pending that was pending Capella's motion to dismiss Cisco's UCL counterclaim that's apparently been fully briefed and waiting submission or argument and submission here.

So one thing I want to do is so set that for hearing if that's still live.  I take it that's still a live motion?

MR. BECKER:  Yes.

THE COURT:  And it's been fully briefed?

(Whereupon the speaker was inaudible.)

THE COURT:  When you speak, just speak into these mics.

MR. STACY:  Wayne Stacy.  Yes, it's been fully briefed.

THE COURT:  Well, I was going to set a date of October 16th because I'm not available for the next two calendars and I have a fairly impacted calendar on the 9th so the 16th is when I can hear that motion.

So unless there's a problem with that, I'm going to set it that date.  All right.

UNIDENTIFIED SPEAKER:  Look at the calendar.  Judge Denotto (phonetic) dropped a bunch of dates on us.

THE COURT:  Okay.

UNIDENTIFIED SPEAKER:  It's possible the 23rd would

be much better because Judge Denotto (phonetic) just finished -- ordered discovery finished in the case we're going to trial on the 15th so I'll be in Canada.

THE COURT:  All right.  The 23rd work?

(Whereupon the speaker was inaudible.)

THE COURT:  All right.  How about the 21st special set?

(Whereupon the speaker was inaudible.)

THE COURT:  All right.  Okay.  And it appears that Capella is anticipating seeking leave to file a motion a strike FNC's affirmative defense of unenforceability due to equitable conduct and there's a contention that this is untimely.  What's your respective position on that?

MR. BECKER:  Hello.  This is Robert Becker.  We had filed a motion to amend our complaint and anticipated a response to the amended complaint and we're prepared; if that response included the same defense; that we would move to strike it.  But surprisingly, the Court did not allow us to amend our complaint; and therefore, we did not have the opportunity as --

(Whereupon the speaker was inaudible.)

MR. BECKER:  The defense that was pled is a copy of Cisco's identical defense and the Court did strike that defense upon our motion.

So the basis would be that we, in good faith, did not have

an opportunity to move to strike.  It was unanticipated that the two oddly (phonetic) amended complaint on the basis for the motion as it was already granted in the Cisco case.

THE COURT:  Granted with leave to amend and Cisco is intending to -- has amended so what's the next step?  Are you anticipating a motion visa vie that amendment?  If that happens -- and I take it there are overlapping substantive motions or allegations -- so timely or not, that's -- I'm not sure what the point is in preventing that motion for being brought visa vie FNC as well as Cisco.

MR. BECKER:  It's a time saving proposing as well, your Honor.

THE COURT:  What's that?

MR. BECKER:  That -- I don't believe that Cisco had the right while our motion was pending to amend because their counterclaim that's the subject of the motion is based on the amendments that -- is based on the underlying material that was stricken.  But -- and that's the motion your Honor just scheduled for hearing.

We can agree to not challenge that and just challenge it as amended and that would allow us to not -- not have that hearing on the day that you just set.  And Capella would propose to move to strike both inequitable conduct defenses; the new one that Cisco has pled and the FNC one that's very similar; and then Cisco's counterclaim for unfair competition is based on

that same inequitable conduct defense so we could file it all in one motion and have one hearing and save sort of the back and forth.

THE COURT:  So the motion -- your motion to dismiss Cisco's counterclaim motion to strike the affirmative defense for these two defendants you're proposing be a sort of consolidated hearing.  All right.  Let's hear a response.

UNIDENTIFIED SPEAKER:  No opposition to that other than I'm not sure procedurally what Mr. Becker is proposing; that he's going to withdraw the current motion and then file a new motion and seek a new date or how we'd work through it.  I just want to make sure we're all reading the same papers.

THE COURT:  All right.

MR. BECKER:  Yes, I would withdraw that and file a new motion; a motion that addresses the inequitable conduct defenses in both cases, Cisco and Fujitsu.  And Cisco's defense of -- excuse me -- counterclaim of unfair competition.

THE COURT:  So that would be -- since there's an obvious substantive overlap, you would make this sort of a consolidated motion --

MR. BECKER:  Yes.

THE COURT:  -- directed at those -- the relief of striking -- dismissing the counterclaim and striking the affirmative defense.

MR. BECKER:  Yes.

THE COURT:  All right.  So you would essentially withdraw the current motion and re-brief this as one consolidated motion?

MR. BECKER:  Yes, sir.

THE COURT:  Any reason why that shouldn't follow the normal local Rule five-week briefing schedule?

UNIDENTIFIED SPEAKER:  It should follow the normal schedule.

THE COURT:  So then I'll vacate the October 21st date on the understanding that you're going to withdraw that motion and re-file a new, sort of, consolidated motion.  And when do you think you'll have that?

MR. BECKER:  By next Friday.

THE COURT:  Well, if you do it on Thursday, we can hear it on a Thursday calendar.

MR. BECKER:  Okay.

THE COURT:  If you file it by the 25th, where does that put us, Betty?

(Whereupon the speaker was inaudible.)

THE COURT:  Oh, normally we heard that on the 30th.

(Whereupon the speaker was inaudible.)

THE COURT:  Okay.  November 4th.  We can specially set it for a November 4th hearing.

MR. BECKER:  That's fine for Capella.

THE COURT:  Is 1:30?

(Whereupon the speaker was inaudible.)

THE COURT: 2:30. All right. Good. Then --

MR. CHALSEN: Your Honor, if I may on behalf of Fujitsu?

THE COURT: You need to state your name for the record.

MR. CHALSEN: Yes. This is Chris Chalsen, counsel for Fujitsu.

THE COURT: Yeah.

MR. CHALSEN: And, your Honor, as we expressed in the case management statement, it's Fujitsu's position that Capella's motion -- well, firstly, there's no motion pending to strike our counterclaim.

Secondly, there is -- there are factual differences and allegations are more precise in FNC's counterclaim.

Thirdly, this motion is completely untimely as the Rule 12(f) requires that such a motion to strike to be filed within 21 days of the original pleading and it's been other five months since this issue has been pending and there's no -- there's no -- been no effort on behalf of Capella to address this issue as against Fujitsu until this case management statement, which we feel is an improper way to even raise the issue.

I can't prevent Capella from filing any kind of motion. It could do what it will do; but, your Honor, we, of course, would

vigorously oppose this motion on the basis that it's untimely; that our counterclaim is not the same as Cisco.  It's notwithstanding the representation by counsel and that it should be -- the motion would be denied.

But we're prepared to brief it if your Honor is willing to.

THE COURT:  I think we should brief it because; one, I'm not -- it's not clear to me at this stage there's prejudice from the untimeliness visa vie Rule 12(f).

Second of all, it's not brought now, it's going to be brought in some other -- as a judgment -- motion for judgment on the pleadings or motion for summary judgment; something else.  We might as well face the music at this point.

And to the extent it's different -- you've got different allegations that's going to be -- they're going to have to deal with that.  So I will evaluate each pleading as it comes before me so.

MR. CHALSEN:  Thank you, your Honor.

THE COURT:  Okay.  There's a question -- I want to discuss discovery, but I think what I want to do first is talk about the scheduling because that's sort of the big issue.  And the elephant in the room is the current petition for the PTAB.

And the question of whether or not we should stay or take some kind of pause and await action by the PTAB, which is due no later than January 5th; correct?

UNIDENTIFIED SPEAKER:  February 5th for the first.

THE COURT:  February 5th?

UNIDENTIFIED SPEAKER:  Yes, I think there's a mistake in the brief so the first petition is February 5th; the second one is February 24th.  So by the 24th, we'll have the preliminary responses back from the patent office on all assorted claims.

THE COURT:  So the question is, you know, do we embark -- the big question is do we embark on a markman hearing process and all the briefing while we're awaiting the PTAB's initial determination on the IPR petition knowing that there's a risk that if it's granted -- frankly, in my view, that if they grant IPR as you are probably aware, the inclination these dates is to stay matters depending on how broad and everything it is, but you can well guess that District Judges are loathed to go down the path far and deep only to have things reverse course in a parallel proceeding.

And if IPR is granted, I think the burden sort of shifts in my mind.  And so the question is here, given the complexity of all this of what we're dealing with here, you know, doesn't make sense to defer the -- the claim construction process.

MR. BECKER:  Well, on behalf of Capella, I would say that it doesn't and there are a number of reasons; not the least of which is that it would be very prejudicial to Capella.

The longer that these proceedings drag on -- and they would certainly drag on longer if there was a stay -- the more

prejudicial it is to us.  We no longer have a revenue source.

We were essentially driven out of business by the defendants' infringement and so timing is very critical. That's the reason we asked for this accelerated hearing today. That's why we -- one of the reasons why we originally filed in my Miami.

THE COURT:  So the prejudice is not receiving -- tell me more about the prejudice from, let's say, four months' delay?  What's the business prejudice?

MR. BECKER:  Just the resources to keep on -- the longer everything goes on, the more drained on the limited resources that they have left.

THE COURT:  Well, I mean, this is not -- this is a very competitive situation.  I understand that there may be lost sales and other things that are going on here.  I understand that there's an economic impact of having alleged infringement occurred and not having reasonable royalties -- or whatever it is -- that should be collected.

But other than the revenue stream that is not -- not coming to fruition should you prevail in this litigation, is there any other business harm?

MR. BECKER:  To the extent we will still be around at the end of the case is the issue.  We -- just to be clear, this was a competitive situation.  They did have competing products in the marketplace so it's just recently where they've had to

shut down and sell off the remaining operations so that's the issue.

The -- the rest of it, however, is that by February, of course, we were transferred here, but we were expecting a trial already in February in Miami. Of course, that may not be the case here. It's likely not to be the case here.

But the stay in this case is actually -- first of all, it hasn't been briefed and we would like the opportunity to brief it if the Court is inclined to consider it. But the stay is coming a bit late. They haven't filed a request for it.

The -- in this case, we've already exchanged markman terms. We've done our preliminary infringement contentions. The defendants have done their preliminary invalidity contentions. We're far down the road. All we have to do is brief it, essentially.

So I don't think it's a big issue. We have a list of only ten terms that are in dispute, I believe. I might be off.

THE COURT: How many of these terms might be obviated if IPR is granted and let's say there's a determination of invalidity?

MR. BECKER: All of them.

THE COURT: All of them.

MR. BECKER: If there's a determination of invalidity ultimately?

THE COURT: Yeah.

MR. BECKER:  Well, I think -- the case would be over if the patents were invalidated.

THE COURT:  Well, let me ask; what does it take in terms of resources now that you've gone -- you've already promulgated infringement contentions and invalidity contentions; you've selected the terms; what remains in our local rules or patent local rules is the joint claim construction and prehearing statement and then the briefs.

UNIDENTIFIED SPEAKER:  So I think the statement about what happened in Florida is -- doesn't quite match up with the requirements here in California.

The claim charts provided -- the infringement charts wouldn't hold muster any under motion here in the Northern District of California in the infringement charts -- sorry -- in the invalidity charts is required by Florida; again, aren't the same kind of charts so you're looking at --

THE COURT:  You mean the level of specificity is different?

UNIDENTIFIED SPEAKER:  Yes, there are -- they operate under a very different set of rules than this Court does or the Eastern District of Texas with the level of specificity.

So you're really looking at either seeing the parties' briefing on specificity and understanding what the, you know, what the infringement theories are because they don't qualify for this Court.

So we're going to have to really go back and start on that process again.  The selection of claim terms with something like this, they got to pick five; we got to pick five.  There was no meet and confer.  There's nothing that mimics the process out here.

So you're really looking at going back and starting over having a little bit of foundational work done.

THE COURT:  Well, how essential is, let's say, an amendment of the invalidity and infringement contentions?  How essential is that in order to -- to launch into our claim construction process?  What impact is that going to have?

UNIDENTIFIED SPEAKER:  I think it will be important because talking with some of the codefendants, there are significant ambiguities about what's actually accused of infringement and what's not accused of infringement so it may impact what terms are selected.  And we never even had the meet and confer on that particular issue.  It's just been a straight they choose five; we choose five.

MR. BECKER:  Your Honor, I strongly disagree with that he's saying.  Our infringement contentions are extremely detailed.  It would certainly qualify if any court.  There's never been any commentary or objections about them.

We did go through and meet and confer process where we discussed the terms and discussed the process; not only on the phone, but then back and forth with proposals by e-mail.  So I

don't know where any of this is coming from.

With respect to the burden; the -- Cisco has already filed its request with the PTO.  And in that request, it details all of its positions.  So that the burden on the defendants to turn around a brief on markman, I would suggest -- say is very minimal.  They just need to turn the papers that Cisco's already filed into their markman brief.

I mean -- and another extremely valid point here is that only Cisco has requested the IPR.  So the remaining defendants are not a party to it and I assume that they're going to try to proceed without being burdened by the detriment of an adverse ruling to them in the patent office.

So this is not a case where all of the defendants are on board.  This is a case where just Cisco filed the IPO request.

THE COURT:  If Cisco were to prevail, what's the implication then for the other defendants?

MR. BECKER:  If Cisco prevails and validates every claim that would be at issue in this case, then the claims would be invalid and they would benefit.

THE COURT:  Right.

MR. BECKER:  The issue is -- and as detailed in lots of cases that deny stays -- is that they're not likewise burdened by the detriment of not being able to raise the same defenses in the case if they lose in the patent office.

THE COURT:  Nonetheless, in terms of efficiency, the

issue is raised regardless of whether one or four petitions -- IPR petitions are filed.  The concern is embarking down a road to have it -- to have the course of this case change dramatically during that.

And the question is you have to balance how much do we invest into this process through a balancing delay and whatever prejudice obtains the result of that delay versus, you know, risking some resources at the end of this.

And one way to do this is to -- to not completely stay.  So, for instance, it appears that there's not been much discovery.  I don't know how much discovery you think is going to be needed in order to brief a markman hearing.

MR. BECKER:  I don't think any.

THE COURT:  You don't think any?  Because there hasn't been the production under 3-2 and 3-4; has there?  Documents under our local rules?

UNIDENTIFIED SPEAKER:  That is correct.

THE COURT:  But you think that that's not going to inform the markman process?

UNIDENTIFIED SPEAKER:  I'm not willing to make that broad guess about -- about this.  And I think the patent local rules were thought through to let people work through these issues in a meaningful fashion.

And as Mr. Becker said, you know, his only -- only prejudice is the potential revenue source and that revenue

source is going to be directly linked to whatever happens in the IPR. So accelerating it at this point in time, I don't see how it helps Mr. Becker's clients actually allegedly cure that prejudice around the revenue source; because, as your Honor knows, there's not going to be any exchange of funds until that IPR is finalized.

MR. BECKER: Your Honor, if the patent office decides to proceed with the IPR, there's not going to be -- there's doing to be a decision to proceed. It's not going to be a claim construction order. The -- after the patent office decides to proceed; if they decide to proceed; then we get into the merits of the petition.

But before that, we're not at that stage so Courts routinely deny stays at this stage. At the second stage, they're more likely to grant it. But as I've mentioned before, there are reasons not to grant it and they're not very likely to grant it if or for defendants that are not parties to the IPR.

UNIDENTIFIED SPEAKER: One issue, your Honor, to consider is if you've looked at the file histories generated around these IPR's; if we do claim construction briefing now, inevitably, we're going to be right back in front of you looking to brief it again to add in the filed history statements that were made; the admissions; the expert's reports that were put in the IPR. Basically, we'd be briefing on half

of a record knowing that the rest of the record is going to be available. So I hate to do claim construction twice; probably not as much as you.

THE COURT: Yeah. Do I have as part of this file the IPR petitions that have been filed?

UNIDENTIFIED SPEAKER: Yes, you do.

THE COURT: All right. And there's not -- is that -- you haven't moved for a stay at this point?

UNIDENTIFIED SPEAKER: We have not. We wanted to address with you today how to go forward once you accelerated the case management conference. We wanted to raise it directly with you on how to proceed.

THE COURT: Well, I think this ought to proceed by an expedited motion because; frankly, I think I may have to take a sneak peak and see -- make some assessment of the probability that the IPR will be granted.

I mean, these things -- I'm not going to necessarily predict with any degree of certainty; but in order to asses the risks, I need to know more and I need to take a look at those petitions more carefully.

In the meantime, that will not stop the pleading process that we're talking about nor am I going to stop discovery. I'm not going to put that on hold.

And I think to the extent Florida doesn't have a 3-2 and 3-4 in terms of disclosure of documents related to the various

contentions, that process ought to start.  And so whatever we do, I think that's a fair part of the case to keep moving.

I think the big question, if my mind, is how do I time claim construction because that's going to take a lot of resources for the parties, as well as the Court.

And, you know, if it appears that there's a good chance that IPR is going to be granted, I may be inclined to defer that at least until shortly after we hear from the PTAB.

On the other hand, if it looks to me that it's a bit of a long shot, I make take my chances and just say let's go forward and see where we're at.

So let's brief -- when you file your motion for stay and -- and get your opposition, we can do that on a slightly expedited basis.  I don't know how long it will take you.

UNIDENTIFIED SPEAKER:  I can have it by next Wednesday.

THE COURT:  Okay.  And can you respond on -- how long will it take you to respond to that statement of motion?

MR. BECKER:  So it's a pretty important issue for us.  We'd like two weeks, at least.

(Whereupon the speaker was inaudible.)

THE COURT:  That opposition is October 9th.  The motion will be filed the 25th.  Opposition is the 9th; reply would be after.

UNIDENTIFIED SPEAKER:  Yes.

(Whereupon the speaker was inaudible.)

THE COURT:  Well, let's see.  How about the week after that?  I'm not here.  Let's set it tentatively for the 21st.  That gives me -- what I'd like to do -- actually, so let me accelerate your briefing a little bit so I have enough time.  I'd like the opposition to be filed by the 7th and the reply to be filed by the 14th so that will at least give me a week.

And in the meantime, I'm going to allow discovery to proceed and direct the parties, now that you're here, to -- if you haven't already done your disclosures under Rule 26, to comply with the Local Rule 3-2 and 3-4 and you get that process going.

UNIDENTIFIED SPEAKER:  When you say discovery proceeding; interrogatories; RFA's, RFP's; all of that or just mandatory --

THE COURT:  Well, I'm anticipating, first of all, starting off with written discovery.  And I don't know if you need RFA's at this point unless you think that's really going to cover something.

Discovery that -- sort of high-level discovery at this point.  I don't want you to spend everything now.  I mean, within reason.

Which also brings up another question; that is, the ADR because I often bifurcate discovery and direct the parties to conduct sort of essential high-level and core discovery with an

eye towards possibly an early ADR process so I do want to ask you about that.

MR. BECKER:  I think we tentatively agreed to go to mediation.  We discussed it on a phone call, but haven't finalized the stipulation.  I believe all the parties are in agreement on that.

THE COURT:  Private mediation?

(Whereupon the speaker was inaudible.)

MR. CHALSEN:  This is Chris Chalsen.

Just to clarify on that point; I don't believe there has been an agreement to proceed to private mediation.  I think the position of all of the defendants, expect for Cisco maybe, that we're willing to consider ADR at the appropriate time, but that it's very premature to even consider private mediation at this point before we've had the sort of even basic discovery on these issues.

THE COURT:  All right.  Well, that's why I bring it up now because I want to know what will it take for you to have sufficient information to intelligently engage in discussions?

UNIDENTIFIED SPEAKER:  Yes, I think we do need to go through a full round of discovery; particularly, on these inequitable conduct issues and other issues that have been raised in the pleadings.

And then also, your Honor, having a mediation before the claim construction is -- order is issued is sometimes

unproductive.  It's much --

THE COURT:  Sometimes it is; sometimes it isn't.

UNIDENTIFIED SPEAKER:  Sometimes it's not, yes.  But we believe it would be more productive to have the mediation after the claim construction process.

UNIDENTIFIED SPEAKER:  Another reason to continue the claim construction.

MR. STACY:  To be clear -- this is Wayne Stacy for Cisco.  Cisco's positions is very firm on this.  There's nothing to discuss until we see the patent officer's preliminary views on validity.  Because if the patents are -- all the asserted claims are invalid, that makes the determination of the amount Cisco would pay fairly straightforward.

And we obviously believe in the strength of IPR's and these patents have no merit based on the asserted claims.  So claim construction discovery, nothing would change the fact that we need to see the IPR decision.

THE COURT:  All right.  Well, it takes two or five to tango here and it doesn't make sense to force people into mediation if it's -- there's not bilateral interest.

MR. BECKER:  Your Honor, a point that my associate has pointed out.  There was separate counsel that's working on the IPR; a different law firm.  And they have a deadline of November 5th to file their opposition to the IPR.

So right now, we have the IPR request and then there's an opposition that's due on November 5th.  That will lay out the position as to why the IPR should not go forward at all.  It's something that counsel Sterne Kessler specializes in.  We are not lead counsel in that.

That is the paper that is going to inform the Court from our side as to whether the IPR will go forward.  We already have the paper, I believe, the IPR request from Cisco.

So it would seem instead of briefing this, that the Court should review Cisco's paper.

THE COURT:  That's going to be filed November 5th?

MR. BECKER:  The first -- the -- there's two; one's the 5th; one's is the 21st.  I imagine they're going to be almost identical so I don't think -- I don't think it would benefit anyone to wait for the second one, but it would for the first one.

UNIDENTIFIED SPEAKER:  And, your Honor, I am lead counsel in the IPR's also.  That is an optional paper.  They choose the filing.  They have to file it by November 5th.

So if this is the case and they want to use the -- their late filing date as a reason to drag discovery out and use that as pressure against us, they can accelerate that and file more quickly and then the patent office is bound by their filing date to give the preliminary response within three months.

So if appellant can respond by October 5th rather than

November 5th, we'd see something from the patent office by January 5th.  We can accelerate all of this and get the patent offices due without wasting Court resources and party resources on things that very likely can be undone.

THE COURT:  Well, I mean, the ball is sort of in Capella's court.  If it is not filed until November 5th, that means that we won't hear from -- we may not hear from the PTAB until February 5th, which means that we may not -- depending on what I decide to do -- may not start claim construction process until then.

So the earlier it's filed, the earlier that gets resolved; or, if you're suggesting now that I should not rule on the stay motion until I see the opposition; which makes some sense; that means by the time I get that and have a chance to absorb that and maybe hear from you, we'll be well into November when I decide whether to stay.

At that point, it becomes less and less significant because if I stayed, what I would do -- it would be a delay; then, it's about a 60-day delay.

And at that point, one might say well, if we're going only to gain 60 days, let's just take a breather and see what happens, at least on the claim construction process.  So that's the quandary.

I mean, I'll leave it to you.  I mean, I hear what you're saying that --

UNIDENTIFIED SPEAKER:  We'll just --

THE COURT:  -- to get the full benefit --

MR. BECKER:  -- brief it as we just discussed.

THE COURT:  All right.  Let's just stay on that course; because otherwise, if it's much longer, then it becomes less significant.  We're only talking about 60 days one way or the other.  So -- all right.  So we're going to continue that on that path.

In terms of -- so it sounds like ADR is going to be deferred.  We're not ready for that; at least until potentially claim construction and or PTAB ruling on the petition.  So it sounds like we're not going to be ready to discuss this until sometime earlier next year in front of ADR.

I will say that if you have a change of heart for any reason and you want to utilize any of our processes, whether it's Mandatory Judge or Court Adjunct Mediation, let me know; otherwise, I'm going to assume no ADR for a while.

And then in terms of discovery, I'd like to see -- and now that I'm going to open the door to discovery, I'd like to see a discovery plan for the next three months; four months; whatever it is you're going to do; so that we don't get into people on different wavelengths as to what the scope and what the focus is going to be; but you know best at this point.  But my intent is to open the door to start documenting exchange, high-level discovery so we don't lose time.

MR. BECKER:  Briefly on that, your Honor?

THE COURT:  Yeah.

MR. BECKER:  One of the issues that we have here is that the products that are at issue by the defendants are tightly controlled and kept secret.  So we know about infringement and we put it in our infringement contentions about what we suspect.  There's a lot more infringement; maybe infringement of other patents; infringement of other claims we haven't mentioned; infringement of patents and claims that are not in the IPR.

So the discovery is very important; because, for the most part, the parties like to keep the -- even the high-level, functional details of the products very secret.

UNIDENTIFIED SPEAKER:  Your Honor, I'm disturbed by one thing that was just said is that he wants to take discovery from this case and expand it and use it to file other patent suits on patents that aren't related to this case.

I don't think that would be permissible under the standard Northern District protective order.  If he's got other patents that he's contemplating suing on, it wouldn't be appropriate to use this litigation as a fishing expedition.

THE COURT:  Yeah, I didn't know that you were saying that.

MR. BECKER:  That's not what I'm saying.

THE COURT:  I didn't hear that.  What I -- what I'm

hearing you saying is that you anticipate there may be some motion work with respect to discovery. If there's some dispute about your getting access to sensitive information, even under protective order or attorneys' eyes only type of protective order, I hope you all can work that out.

But my intent is not to stay discovery at this point, but to start that discovery process. That's exactly what I'm suggesting why I want a discovery plan filed, let's say, in the next two weeks with me.

And if there are going to be issues, at least I'd like to get a preview of what the problems are. I'm hoping that you have enough experience in these matters that you know how to navigate that without having to come back here for resolution.

So discovery will proceed. Discovery plan to be filed within two weeks. I will hear the motion to stay on October 21st at 1:30. And then we've got the other motions and we'll set that for November -- I forgot -- November 4th. So we've got -- we'll see you twice in the next couple of months here; all right?

MR. BECKER: Okay. Thank you.

THE COURT: Great. Thanks.

(Proceedings concluded at 10:18 a.m.)

## <u>CERTIFICATE OF REPORTER</u>

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____ DATE 9-24-14

Carrie McKee-Parks                          Date
McKee-Parks65@att.net
510-637-9897