1  Robert D. Becker (CA Bar No. 160648)
   Rbecker@manatt.com
2  MANATT, PHELPS & PHILLIPS, LLP
   350 Cambridge Ave., Suite 300
3  Palo Alto, CA 94306
   Telephone:  (650) 812-1300
4  Facsimile:  (650) 213-0260

5  Attorneys for Plaintiff,
   CAPELLA PHOTONICS, INC.

6

7                       UNITED STATES DISTRICT COURT

8                      NORTHERN DISTRICT OF CALIFORNIA

9                          SAN FRANCISCO DIVISION

10

11 CAPELLA PHOTONICS, INC.,            No. 3:14-CV-03348-EMC

              Plaintiff,
12
        v.                            **PLAINTIFF'S REQUEST TO MAINTAIN
13                                     CURRENT STAY ON ACTION OR, IN
   CISCO SYSTEMS, INC.,                THE ALTERNATIVE, FOR LEAVE TO
                                       AMEND INFRINGEMENT
14            Defendant.               CONTENTIONS, AND NOTICE OF
                                       INFRINGEMENT OF ADDITIONAL
15                                     DEPENDENT CLAIMS**

16
                                      **Hearing Date: March 7, 2019**
17                                     **Time:         1:30 p.m.**
                                       **Courtroom:    5**
18                                     **Judge:        Hon. Edward M. Chen**

19 CAPELLA PHOTONICS, INC.,            No. 3:14-CV-03349-EMC

              Plaintiff,               (related case)
20

21      v.

22 FUJITSU NETWORK

23 COMMUNICATIONS, INC.,

24            Defendant.

25

26

27

28

| | |
|---|---|
| CAPELLA PHOTONICS, INC., | No. 3:14-CV-03350-EMC |
| Plaintiff, | (related case) |
| v. | |
| TELLABS OPERATIONS, INC. AND CORIANT (USA) INC., | |
| Defendant. | |
| CAPELLA PHOTONICS, INC., | No. 3:14-CV-03351-EMC |
| Plaintiff, | (related case) |
| v. | |
| CIENA CORPORATION, | |
| Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................... 4

    A.    Capella Files this Action and, After a Transfer, Defendants Obtain an Early Stay of this Action Prior to Claim Construction or Any Significant Activity ........ 4

    B.    In Response to the Defendants' IPR Petitions, the PTO Finds All Claims Identified in Capella's Preliminary Infringement Contentions Unpatentable and Capella Files Co-pending Reissue Applications to Cure any Defects ............. 7

III.   DISCUSSION ...................................................................................................... 10

    A.    Judicial Efficiency Warrants Keeping the Current Stay in Place ....................... 10

        1.    The Stage and History of this Litigation Favors Keeping the Stay in Effect .............................................................................................. 12

        2.    Keeping the Stay in Effect Should Simplify the Issues ........................... 12

        3.    A Stay Would Not Unduly Prejudice or Present a Clear Tactical Disadvantage to the Defendants ............................................................ 12

    B.    If the Court Is Inclined to Lift the Stay, Capella Should Be Granted Leave to Amend Its Infringement Contentions ........................................................... 12

    C.    There Are No Grounds to Dismiss Capella's Claims or to Enter Judgment ......... 16

    D.    Notice of Infringement of Additional Dependent Claims ................................... 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
  2017 WL 732896 (N.D. Cal. Feb. 24, 2017) ..........................................13, 14, 15, 16

*Apple Inc. v. Samsung Elecs. Co.*,
  2012 WL 5632618 (N.D. Cal. Nov. 15, 2012).................................................13, 14

*Apple, Inc. v. Samsung Electronics Co., Ltd.*
  Case No. 12-CV-0630-LHK (PSG) (N.D. Cal., June 26, 2013)..............................13

*ASCII Corp. v. STD Entertainment USA, Inc.*,
  844 F. Supp. 1378, 30 U.S.P.Q.2d 1709 (N.D. Cal. 1994) ......................................11

*Cap Co. Ltd. v. McAfee, Inc.*,
  Case No. 14-cv-05068-JD (N.D. Cal. August 10, 2015) ........................................13

*Catlin v. United States*
  (1945) 324 U.S. 229, 65 S.Ct. 631 ..........................................................................18

*Christianson v. Colt Industries Operating Corp.*,
  486 U.S. 800 (1988)..................................................................................................17

*Collaborative Agreements, LLC v. Adobe Sys. Inc.*,
  2016 WL 1461487 (N.D. Cal. Apr. 14, 2016) ........................................................13

*Corel Software, LLC v. Microsoft Corporation*,
  2018 WL 5792323 (D. Utah 2018) ..........................................................15, 16, 18

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988)................................................................................10

*Evolutionary Intelligence LLC v. Yelp Inc.*,
  No. C-13-03587 DMR, 2013 WL 6672451 (N.D. Cal. Dec. 18, 2013)...................10

*Gelboim v. Bank of America Corp.*
  (2015) US, 135 S.Ct. 897 .........................................................................................18

*Gould v. Control Laser Corp.*,
  705 F.2d 1340 (Fed.Cir.1983)..................................................................................11

*HSBC Bank USA, N.A. v. Townsend*,
  793 F3d 771 (7th Cir. 2015)................................................................................18, 19

*In re Cuozzo Speed Techs.*,
  793 F.3d 1268 ............................................................................................................3

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.*,
  385 F.Supp.2d 1022 (N.D.Cal. 2005) ......................................................................11

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp. ("Karl Storz II")*,
  2016 WL 2855260 (N.D. Cal. May 13, 2016) .........................................................13

i

# TABLE OF CONTENTS
### (continued)

*Medichem, S.A. v. Rolabo, S.L.,*
   353 F.3d 928 (Fed. Cir. 2003)..........................................................................11

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
   467 F.3d 1355 (Fed. Cir. 2006)........................................................................14

*Pi-Net Int'l, Inc. v. Focus Bus. Bank,*
   C-12-4958-PSG, 2013 WL 4475940 (N.D. Cal. Aug. 16, 2013)..........................10

*Preiser v. Newkirk,*
   422 U.S. 395 (1975)........................................................................................17

*Radware, Ltd. v. A10 Networks, Inc.,*
   2014 WL 3725255 (N.D. Cal. July 28, 2014) (*quoting Karl Storz Endoscopy–*
   *Am., Inc. v. Stryker Corp. ("Karl Storz I"),* 2011 WL 5574807 (N.D. Cal. Nov.
   16, 2011)))..................................................................................................13

*Riley v. Kennedy*
   (2008) 553 US 406, 128 S.Ct. 1970..................................................................18

*Slot Speaker Techs., Inc. v. Apple, Inc.,*
   2017 WL 1278744 (N.D. Cal. Apr. 6, 2017) ......................................................14

*Sunpower Corp. Sys. v. Sunlink Corp.,*
   2009 WL 1657987 (N.D. Cal. June 12, 2009) ....................................................13

*Target Training Intl., Ltd. v. Extended Disc N.A., Inc.,*
   645 Fed.Appx 1018 (April 22, 2016)..................................................................17

## STATUTES

28 U.S.C. 1138(a) ..........................................................................................17

35 U.S.C. § 251 ..........................................................................................1, 7

35 U.S.C. § 252 ..............................................................................................1

28 USC § 1291 ..............................................................................................18

## OTHER AUTHORITIES

37 C.F.R, pt. 42 ..............................................................................................9

83 Fed.Reg. 197 ..............................................................................................9

## RULES

L.R. 3-6 ..........................................................................................3, 12, 13, 14

Rule 36 ..........................................................................................................17

I.    **INTRODUCTION**

Pursuant to the Court's instruction at the January 17, 2019 Case Management Conference held in this matter (and the Minute Entry that followed (Dkt. # 200)), Plaintiff, Capella Photonics, Inc. ("Capella"), hereby requests that the Court maintain the stay currently in effect in these consolidated cases pending resolution by the Patent and Trademark Office ("PTO") of reissue applications for the Patents-in-Suit filed by Capella during the stay.

This patent infringement action has been stayed since March 6, 2015.  On that date, the Court ruled that the action was in its "early stages" and ordered the case stayed "pending final exhaustion of the relevant review proceedings" by the PTO. (Dkt. # 172 at p. 6).  Capella asserts that the "relevant review proceedings" include two applications Capella filed with the PTO during parallel IPR proceedings  to have the Patents-in-Suit reissued (the "Reissue Applications").  Capella filed the Reissue Applications during the current stay while the PTAB's Final Written Decisions from the IPRs were up on appeal.  In those decisions, the PTAB ruled that some but not all of the claims of the Patents-in-Suit were not patentable. Those decisions are now final, but the Reissue Applications remain pending, are awaiting examination by the PTO and other claims in the Patents-in-Suit remain valid.

Capella filed its Reissue Applications pursuant to the reissue statutes which provide, in pertinent part:

> "whenever any patent is … deemed wholly or partly inoperative or invalid … by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director <u>shall</u>, on the surrender of such patent and the payment of the fee required by law, <u>reissue the patent for the invention disclosed in the original patent</u>."
> 35 U.S.C. §251 (Reissue of Defective Patents) (emphasis added).

> "insofar as the claims of the original and reissued patents are *substantially identical*, such surrender <u>shall not affect any action then pending nor abate any cause of action then existing</u>, and the reissued patent, to the extent that its claims are substantially identical with the original patent, <u>shall constitute a continuation thereof and have effect continuously from the date of the original patent</u>."  35 U.S.C. §252 (Effect of Reissue) (emphasis added).

Capella's Reissue Applications are part of the ongoing "relevant review proceedings" that began with the IPRs requested by the Defendants.  Capella filed the Applications to correct the issues that resulted in the cancellation of the set of claims set forth in Capella's

1

1    Preliminary Infringement Contentions.[1]   Upon reissue Capella will surrender the original

2    Reissue Patents-in-Suit.  Claims in these newly reissued patents that are substantially identical

3    with the original claims will constitute a continuation of the original Reissue Patents-in-Suit

4    and have effect continuously from their original date of issuance.  Capella's surrender of the

5    original Patents-in-Suit "shall not affect any action then pending nor abate any cause of action

6    then existing."  At this point in time, given that the PTO has not yet reviewed the Reissue

7    Applications, it is not known what the final claims will look like.

8          The ongoing reissue proceedings alone justify continuation of the stay. A continuance

9    of the stay serves judicial efficiency as it will provide the parties and the Court with the

10   benefit of the PTO's determination on Capella's reissue applications and the final language of

11   the claims of the Patents-in-Suit.

12         There is no prejudice to Defendants Cisco Systems, Inc. ("Cisco"), Ciena Corporation

13   ("Ciena"), Fujitsu Network Communications, Inc. ("FNC"), Coriant Operations, Inc.

14   (formerly Tellabs Operations, Inc.), and Coriant (USA) Inc. (Coriant entities collectively

15   "Coriant") (collectively "Defendants") posed by keeping in effect the stay that the Defendants

16   requested and obtained.  The Defendants elected to initiate review by the PTO when they filed

17   their IPR petitions and the Reissue Applications filed by Capella are part of that same review.

18   (See concurrently filed Declaration of Robert Becker in Support of this Motion ("Becker

19   Decl.") at ¶ 10 and Exs. F and G.)  All of the factors that the Defendants cited in support of the

20   stay "pending final exhaustion of the relevant review proceedings" apply equally today in light

21   of Capella's ongoing Reissue Applications.

22         If the Court intends to lift the stay for any purpose, including to entertain any request

23   to dismiss, Capella hereby seeks leave to amend its Preliminary Infringement Contentions as

24   follows:

25         1) To include additional dependent claims from the issued Patents-in-Suit that were not

26   challenged by the Defendants in the IPRs and remain valid (hereafter "Additional Dependent

27   ─────────────────
[1]   In the IPRs, the Defendants challenged the claims set forth in the Preliminary Infringement Contentions that
28   Capella filed  at the outset of the case, but no other claims.  The other claims in the Patents-in-Suit were not cancelled
     and remain valid.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

2

Claims").  The infringement contentions for these Additional Dependent Claims are merely an extension of the Preliminary Infringement Contentions that Capella previously asserted for the claims on which they depend (Becker Decl. Ex. K); and

2) To update the Preliminary Infringement Contentions for the previously asserted claims to conform them to Capella's Reissue Applications and the new reissue patents to be issued by the PTO at the conclusion of the reissue proceedings.

There is good cause for such amendments because the PTAB, in finding the claims in the IPR proceedings obvious in view of the prior art, adopted a broad claim construction for the Patents-in-Suit that was radically different from anything that had been contemplated or proposed by Capella.  And the PTAB adopted the claim construction using the so-called "Broadest Reasonable Interpretation" (BRI) standard.  That standard is broader than what is used by district courts and results in invalidation of many claims that would otherwise be held valid in district court.[2]  Under this Court's Patent Local Rules, the adoption of such a different claim construction is a primary ground justifying amendment of infringement contentions. See Patent L.R. 3-6. Capella's proposed amendments are further warranted because the new contentions are mere extensions of the assertions Capella made in its Preliminary Infringement Contentions filed at the outset of the case.  Moreover, this action remains in its early stages and there is no legitimate prejudice to Defendants posed by the amendments.

Capella opposes any counter-motion of the Defendants, including to lift the stay to dismiss Capella's claims or to enter judgment in this matter.  There are numerous claims in the Patents-in-Suit that remain valid and that Capella is entitled to assert against the Defendants.

---

[2] Issued patents receive dramatically different levels of deference in district court and PTAB proceedings. In district court, patents enjoy a statutory presumption of validity and challengers must prove each patent claim invalid by clear and convincing evidence—the highest burden of proof in U.S. civil litigation. But no such presumption of validity applies in PTAB proceedings. Petitioners need only establish unpatentability by a preponderance of the evidence—i.e., that the claims are more likely than not unpatentable. This is a significantly reduced burden of proof compared to litigation.

Claim construction standards also differ. District courts interpret patent claims based on the principles articulated in Phillips v. AWH Corp. (Fed. Cir. 2005). The PTAB, on the other hand, historically applied the PTO's "broadest reasonable interpretation (or construction)" to claims in unexpired patents. *In re Cuozzo Speed Techs.*, 793 F.3d 1268, 1278 (Fed. Cir. 2015(Fed. Cir. 2015). In many cases those standards may yield the same construction if, for example, the specification expressly defines a claim term. But in others the PTAB's construction may be somewhat broader, which may sweep in more prior art anticipating or rendering obvious the challenged claims.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

3

1    Defendants have no legitimate basis to require Capella to assert those claims in a new action
2    when this one remains in its early stages as a result of the stay Defendants requested.
3    Moreover, one of the Defendants has pending and unresolved counterclaims in these actions
4    seeking to invalidate the Patents-in-Suit, which counterclaims preclude the entry of judgment.

5    Finally, Capella provides notice that the Defendants infringe Additional Dependent
6    Claims, including claim 13 of the '368 patent-in-suit and 12 of the '678 patent-in-suit.
7    Becker Decl. Ex. C.

8    **II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

9          **A.      Capella Files this Action and, After a Transfer, Defendants Obtain an
10                 Early Stay of this Action Prior to Claim Construction or Any
                   Significant Activity.**

11    Capella is a pioneer of optical switching technology used in optical transmission
12    networks by the telephone, Internet and cable television industries.  In such networks, signal
13    switching is accomplished in the optical domain by a Reconfigurable Optical Add-Drop
14    Module or "ROADM".  ROADMs are significant because, among other things, they are
15    significantly faster, less expensive and easier to use than other switching technologies.

16    Through many years of research and development, Capella has been granted an
17    extensive of portfolio of patents on optical switching devices, including U.S. Patent RE42,368
18    (the "'368 Patent") entitled "Reconfigurable Optical Add-drop Mulitplexers with Servo
19    Control and Dynamic Spectral Power Management Capabilities" (Becker Decl. Ex. A) and
20    U.S. Patent RE42,678 (the "'678 Patent") entitled "Reconfigurable Optical Add-drop
21    Mulitplexers with Servo Control and Dynamic Spectral Power Management Capabilities"
22    (Becker Decl. Ex. B) (collectively the "Patents-in-Suit").  (See Amended Complaint at Dkt. #
23    30.)  The Patents-in-Suit cover ROADM products that incorporate a wavelength selective
24    switch.

25    Capella filed this patent infringement action in February 2014 in the Southern District
26    of Florida.  (See Dkt. #1.)  Capella alleges that Defendants infringe the Patents-in-Suit by
27    making, selling and using ROADM products that incorporate a wavelength selective switch
28    covered by the patents.  (*See e.g.*, Amended Complaint at Dkt. # 30.)  Almost immediately

1   thereafter, Capella filed Preliminary Infringement Contentions in April 2014 as ordered by the

2   Florida Court.   (See Scheduling Order at Dkt. #16 and Capella's Notice of Filing of

3   Infringement Contentions at Dkt. # 25.)

4        In its Preliminary Infringement Contentions, Capella asserted that Cisco infringed

5   claims 1-6, 9-12 and 15-22 of the '368 Patent and claims 1-4, 9, 10, 13, 17, 19-23, 27, 29, 44-

6   46, 53 and 61-65 of the '678 Patent.   Capella asserted similar Preliminary Infringement

7   Contentions against the other Defendants. Becker Decl. Ex. C.

8        In response to Capella's Complaint against it, one of the Defendants, Ciena, asserted

9   counterclaims seeking a declaratory judgment of non-infringement and invalidity of the

10  Patents-in-Suit.  (See Ciena's Answer and Counterclaim at Dkt. 155).  Ciena's counterclaims

11  for invalidity were not limited to the claims asserted by Capella in its Preliminary

12  Infringement Contentions and that counterclaim remains pending.

13       The Florida District Court subsequently consolidated the cases and Defendants

14  obtained a transfer of the action to this Court in July 2014.  (See Consolidation Order at Dkt.

15  #76 and Transfer Order at Dkt. # 77.)

16       On July 15, 2014, Cisco filed a petition at the PTO for inter partes review ("IPR")

17  (IPR2014-01166) of the '368 Patent.  Cisco filed an IPR petition (IPR2014-01276) for the

18  '678 Patent less than a month later.   In the two IPR petitions, Cisco challenged the

19  patentability of the claims asserted by Capella in the Preliminary Infringement Contentions,

20  but no others.  After the other Defendants filed similar IPR petitions, the PTO joined Ciena,

21  FNC, and Coriant in these two IPR proceedings (the "IPR Proceedings").  Like Cisco, the

22  other Defendants did not challenge  all of the claims of the Patents-in-Suit in their IPR

23  Petitions.

24       The parties filed their initial Case Management Conference ("CMC") Statement with

25  this Court in September 2014. (See Dkt. # 107)  Defendants contended in the CMC Statement

26  that the case was not appropriate for an expedited scheduled, should be stayed based on its

27  pending IPR petitions and opposed setting any firm trial date.  (See CMC Statement at Dkt. #

28  107 at pp. 12 and Appendix A proposing that trial date be set after the Markman hearing.)

1   After the September 18, 2014 CMC, the Court set a Markman hearing for March 30, 2015[3]

2   and declined to set any trial date.  (See Order Regarding Joint Discovery Plan at Dkt. # 122.)

3   No deadline was ever set by the Court for Capella's final infringement contentions or to

4   amend Capella's Preliminary Infringement Contentions.  (*Id*.)

5        Shortly after the September 2014 CMC, Cisco filed the first motion to stay this action

6   pending the IPR proceedings.  (See Dkt. #113.)  The Court denied that motion.  (See Order at

7   Dkt. # 131).  After the PTO instituted review of the Patents-in-Suit, the Court granted Cisco's

8   renewed stay motion by Order dated March 6, 2015.  (See Dkt. # 172.)  In its stay motion,

9   Cisco conceded that "no significant activity has taken place" in the action.  (See Dkt. # 161 at

10   p. 2:6-9.)  The Court agreed and stayed the consolidated actions "in their entirety pending final

11   exhaustion of the relevant review proceedings, including any appeals." (Dkt. # 172 at p. 6).  In

12   its stay Order, the Court found as follows:

13        [T]he early stage of this litigation weighs in favor of a stay.  This Court had

14        specifically limited the scope of discovery and moderately delayed substantive

15        hearings (*e.g.*, claim construction) pending the PTO's determination whether to

16        institute IPR of the asserted patents.  See Docket No. 131.  Consequently, very

17        little substantive work has been done in this case, and there are no immediately

18        pressing deadlines or trial dates.  Put simply, "[c]onsidering the substantial amount

19        of work that lies ahead of both parties," the Court finds that this case is still in its

20        early stages …."

21   (See Dkt. # 172 at p. 3:3-9.)

22        As a result of the stay, this case remains stayed in its early stages.  No substantive

23   activity has taken place in the approximately four years since Defendants sought and obtained

24   the stay, and the "relevant review proceedings," i.e., the reissue proceedings, in the PTO are

25   ongoing.  Defendants have never sought to lift the stay or contended that the stay was lifted by

26   its terms.

27

28   ─────────────
[3] The Court subsequently moved the Markman hearing back to April 13, 2015.  (See January 13, 2015 minute entry (Dkt. #152).)

1

**B.    In Response to the Defendants' IPR Petitions, the PTO Finds All
Claims Identified in Capella's Preliminary Infringement Contentions
Unpatentable and Capella Files Co-pending Reissue Applications to
Cure any Defects.**

2

3

4    Between January 2016 and October 2016, the PTO issued Final Written Decisions on

5    the Defendants' IPRs.   In those Final Decisions, the PTO found unpatentable each claim

6    identified by Capella in its Preliminary Infringement Contentions.   After Capella appealed, the

7    Federal Circuit affirmed the PTO's Final Written Decisions in February 2018.    Capella

8    exhausted its appeals in November 2018, when the U.S. Supreme Court denied its Petition for

9    Writ of Certiorari.   Prior to the PTO's actions, the '368 Patent included claims 1-22 and the

10    '678 Patent included claims 1-67.   On December 10, 2018, the PTO cancelled claims 1-6, 9-13

11    and 15-22 of the '368 Patent and claims 1-4, 9, 10, 13, 17, 19-23, 27, 29, 44-46, 53 and 61-65

12    of the '678 Patent.   (Becker Decl., ¶11 and Exs. H and I.)

13    On June 29, 2018, before the PTO cancelled the challenged claims, Capella filed with

14    the PTO applications pursuant to 35 U.S.C. § 251 to reissue both the '368 Patent and the '678

15    Patent (the "Reissue Applications").   Section 251 provides for the reissue of any patent that is,

16    "through error, deemed wholly or partly inoperative or invalid."   The Reissue Applications

17    include proposed preliminary amendments to  original claims and adds new claims.  (Becker

18    Decl. at ¶ 10 and Exs. F and G.)   The Reissue Applications have advanced to the examination

19    stage and the PTO's initial response to the preliminary amendments is expected  in the first

20    quarter of 2019.

21    Claim 1 of the '368 patent, as originally issued, is set forth here with the proposed

22    preliminary reissue amendments underlined.  (Becker Decl., Ex. F, p. 3.)

23    *1. An optical add-drop apparatus comprising fiber collimators serving as an input
port, one or more other ports, and an output non, the apparatus comprising;*

24    *the fiber collimator [[an]] input port for an input multi-wavelength optical signal
having first spectral channels;*

25

*the fiber collimator one or more other ports for second spectral channels;*

26

*the fiber collimator [[an]] output port for an output multi-wavelength optical
signal;*

27

28

7

REQUEST TO MAINTAIN CURRENT STAY                                          NO. 3:14-CV-03348-EMC

*a wavelength-selective device for spatially separating said spectral channels; [and]*

*a spatial array of beam-deflecting elements positioned such that each element receives a corresponding one of said spectral channels, each of said elements being individually and continuously controllable in two dimensions to reflect its corresponding spectral channel to a selected one of said fiber collimator ports and to control the power of the spectral channel reflected to said fiber collimator selected port.*

Dependent claim 13 as originally issued is also set forth here.  This claim was not asserted in Plaintiff's Preliminary Infringement Contentions and was not cancelled in the IPR proceedings.  Claim 13 itself has not been edited.  Nevertheless, Claim 13 depends from Claim 1 and an amendment  Claim 1 has been proposed as indicated above.

*13. The optical add-drop apparatus of claim 1, wherein said beam-deflecting elements comprise micromachined mirrors.*

Similar amendments have been proposed for the other cancelled claims.  Claim 1 of the '678 patent, as originally issued, is set forth here with the proposed preliminary amendments underlined.[4]  (Becker Decl. Ex. G, p. 3.)

*1. A wavelength-separating-routing apparatus, comprising:*

*a) multiple fiber collimators, providing and serving as an input port for a multi-wavelength optical signal and a plurality of output ports;*

*b) a wavelength-separator, for separating said multi-wavelength optical signal from said fiber collimator input port into multiple spectral channels;*

*c) a beam-focuser, for focusing said spectral channels into corresponding spectral spots; and*

*d) a spatial array of channel micromirrors positioned such that each channel micromirror receives one of said spectral channels, said channel micromirrors being pivotal about two axes and being individually and continuously controllable to reflect [said] corresponding received spectral channels into any selected ones of said fiber collimator output ports and to control the power of said received spectral channels coupled into said fiber collimator output ports.*

Dependent claim 12 as originally issued is also set forth here.  This claim was not asserted in Plaintiff's Preliminary Infringement Contentions and was not cancelled in the IPR proceedings.  Claim 12 itself has not been edited.  Nevertheless, Claim 12 depends from Claim 1 and an amendment for Claim 1 has been proposed as indicated above.

---

[4] Similar amendments were made to the other claims that were cancelled.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
San Francisco

REQUEST TO MAINTAIN CURRENT STAY                    NO. 3:14-CV-03348-EMC

*12. The wavelength-separating-routing apparatus of claim 1 wherein each channel micromirror is a silicon micromachined mirror.*

As can be seen, the '368 and '678 claims have been amended to merely clarify that the claimed fiber collimators serve as ports. During the IPR proceedings, under the broader BRI claim construction standard employed by the PTAB at that time, the PTAB found that the claims were not so limited and found them unpatentable in view of the prior art. 368 FWD at 12-15 and 22-23 (Becker Decl. Ex. D); 678 FWD 13-17 and 26-28 (Becker Decl. Ex. E.)[5] re Capella did not anticipate and could not reasonably have anticipated this broad claim construction at the time it filed its Preliminary Infringement Contentions and no party included these claim constructions in their Markman papers.[6] Capella asserts that this issue would not have surfaced in these district court proceedings as the district court is not able to use the BRI standard then employed by the PTAB.[7] (Becker Decl. ¶ 9.)

Capella asserts Additional Dependent Claims, including at least original claim 13 of the '368 patent and original claim 12 of the '678 patent, are infringed by the Defendants as set forth in Plaintiff's Preliminary Infringement Contentions. More specifically, Claim 13 of the '368 patent depends from Claim 1 and that Claim 1 was asserted and set forth in the Plaintiff's Preliminary Infringement Contentions. Claim 13 further specifies that the beam-deflecting elements comprise micromachined mirrors, but the mirror limitation was already present in original claim 1 of the '678 patent and is charted there. Claim 12 of the '678 patent depends from Claim 1 and that Claim 1 was asserted and set forth in Plaintiff's Preliminary

---

[5] Capella carefully drafted its original patent applications to both expressly disavow circulators and to explicitly provide a glossary meaning that fiber collimators served as ports. And in the 678 patent, Capella made this even more explicit by stating this meaning of ports directly in the independent claims. Capella believed this intrinsic evidence, even under a BRI standard, would require fiber collimators to serve as the claimed ports, which would distinguish them from known prior art. Capella could not have known that the Board would ignore this disavowal and explicit glossary meaning when determining that the prior art teaching circulators read on fiber collimators serving as ports. (Becker Decl. ¶ 9.)

[6] In their Joint Claim Construction and Prehearing Statement (Dkt. # 151) the parties jointly identified "Channel micromirror" for construction. Capella asserted that no term other than "channel micromirror" requires construction and that all other terms should be awarded their plain and ordinary meaning. The Defendants identified the following additional terms for construction: "Continuously"; "Controllable in two dimensions/Controlling . . . in two dimensions"; "Corresponding"; "Beam-deflecting element(s)"; "Elements being individually… controllable"; "Maintaining a predetermined coupling"; and "Servo-control assembly".

[7] Since the IPR decisions, the PTO has decided to abandon the BRI standard for IPRs and now uses the same standard as district courts. (Becker Decl. Ex. J, 83 Fed.Reg. 197 (Oct. 11, 2018 (to be codified as 37 C.F.R, Part 42.)

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Infringement Contentions.   Claim 12 further specifies that the micromirrors are silicon

2   micromachined mirrors.  Capella contends that beam deflecting elements/micromirrors in the

3   WSSs of the accused ROADM devices are silicon micromachined mirrors.

4   **III.**   **DISCUSSION**

5       **A.**   **Judicial Efficiency Warrants Keeping the Current Stay in Place.**

6       In *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, C-12-4958-PSG, 2013 WL 4475940, at *1

7   (N.D. Cal. Aug. 16, 2013), Judge Grewal summarized the unique circumstances of patent

8   litigation that have created the question at bar:

9         Patent disputes are unique in some ways, not so unique in others. One

10   unique, and frankly, often puzzling aspect of patent cases is that they can proceed
    in any number of different venues, often at the same time. Even ignoring the
    possibility of multiple cases against multiple defendants proceeding in multiple

11   districts, a lone case in a single district case can proceed in parallel with a case
    before the International Trade Commission even as the Patent and Trademark

12   Office reconsiders the scope and validity of the patent at issue. The result is that
    multiple arms (and resources) of the United States government can be called upon,

13   in parallel, and asked to apply multiple standards, even in a dispute involving the
    same plaintiff, the same defendant, the same patent, and the same accused product.

14   The court is hard-pressed to identify even a single circumstance outside the patent
    world where such redundancies are not only permitted, but invited.

15

16         To mitigate the burden of these redundancies, a burden born not only by
    the taxpayers but the parties themselves, the law provides any number of different

17   options to "stay" proceedings in one venue while they continue in another . . . .
    <u>With respect to related proceedings at the PTO, courts can invoke their inherent</u>

18   <u>authority to stay the case until the agency figures whether and how the claims at</u>
    <u>issues will survive a closer look.</u>

19   *See Evolutionary Intelligence LLC v. Yelp In*c., No. C-13-03587 DMR, 2013 WL

20   6672451 at *6 (N.D. Cal. Dec. 18, 2013)(emphasis added).  District courts have the inherent

21   power to manage their dockets and to stay proceedings, including the authority to stay patent

22   infringement cases pending conclusion of a PTO reexamination.  *Ethicon, Inc. v. Quigg*, 849

23   F.2d 1422, 1426–27 (Fed. Cir. 1988); and *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 936

24   (Fed. Cir. 2003) (noting that on remand of § 291 suit, district court was free to consider

25   staying the suit in favor of a pending interference declared in the PTO based on a reissue

26   application filed off of one of the patents-in-suit against the other alleged interfering patent

27   because resolution of the PTO interference "will certainly aid the district court's subsequent

28   proceedings" and "may permit the district court to avoid needless duplication of efforts".)  A

1  stay of a patent infringement action may be "particularly justified where the outcome of the

2  reexamination would be likely to assist the court in determining patent validity and, if the

3  claims were canceled in the reexamination, would eliminate the need to try the infringement

4  issue." *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 385 F.Supp.2d 1022, 1023

5  (N.D.Cal. 2005) (*citing Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.1983)).

6      In this District, "there is a liberal policy in favor of granting motion to stay

7  proceedings pending the outcome of USPTO reexamination or reissuance proceedings."

8  *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381, 30 U.S.P.Q.2d 1709

9  (N.D. Cal. 1994) (granting patentee's motion to stay infringement suit pending outcome of a

10  yet unfiled PTO reexamination and/or reissue proceeding where the parties were in the initial

11  stages of the lawsuit, had undertaken little or no discovery, and the case had not been set for

12  trial, the court concluding that the patentee should be "given the opportunity to file an

13  application for reexamination and/or reissuance, since the USPTO's expertise may assist both

14  the parties and the court in resolving th[e] matter.").   In determining whether to stay a case

15  pending reexamination, courts consider the following factors: (1) the stage and history of the

16  litigation; (2) whether a stay would simplify the issues in question and trial of the case; and (3)

17  whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-

18  moving party.  *In re Cygnus*, *supra*, 385 F.Supp.2d at 1023.

19          **1.      The Stage and History of this Litigation Favors Keeping the Stay in
              Effect**.

20

21      The Defendants have previously argued and the Court has found that this litigation is

22  in its early stages.  (See Dkt. # 172 at p. 3:3-9.)   As a result of the stay, the case remains at the

23  early stage.  Accordingly, this factor continues to weigh in favor of keeping the stay in effect.

24          **2.      Keeping the Stay in Effect Should Simplify the Issues.**

25      Here, the same factors that this Court concluded warranted a stay remain in effect.

26  The PTO's expertise may assist both the parties and the court in resolving the matter.  Here, as

27  explained by Judge Grewewal, the PTO has been called upon to determine whether and how

28  the claims at issues will survive a closer look.  As such, outcome of the reissue will be likely

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   to assist the Court in determining patent infringement and validity, and, if the claims are found

2   unpatentable in the reissue, would eliminate the need to try the issues altogether.

3          **3.      A Stay Would Not Unduly Prejudice or Present a Clear Tactical
                      Disadvantage to the Defendants**.

4

5          Under the present circumstances, Defendants cannot establish any prejudice or tactical

6   disadvantage by a continuance of the stay they sought and obtained.  All of the reasons that

7   justified a stay pending the Defendants' IPR Petitions remain in effect and apply equally

8   during the pendency of Capella's Reissue Applications.

9   **B.      If the Court Is Inclined to Lift the Stay, Capella Should Be Granted
            Leave to Amend Its Infringement Contentions.**

10

11         Capella served its infringement contentions at the outset of the first of these

12  consolidated actions pursuant to the Order of the Florida District Court, which had no patent

13  local rules.  (See Scheduling Order at Dkt. #16 and Capella's Notice of Filing of Infringement

14  Contentions at Dkt. # 25.)   The actions became subject to this Court's Patent Local Rule after

15  the transfer in July 2014.

16         Under Patent L.R. 3-6, a party may amend its infringement contentions "only by order

17  of the Court upon a timely showing of good cause."  One of the circumstances expressly

18  identified in the local rules supporting a finding of good cause is "A claim construction by the

19  Court different from that proposed by the party seeking amendment …."  Patent L.R. 3-6.

20  Similarly, as discussed below, courts have found that adverse findings by the PTO on the

21  subject of validity, as in this case, is the type of adverse litigation development contemplated

22  by the local rule that provided good cause for amendment.

23         Cases cited in the commentary to L.R. 3-6 provide some guidance on the applicable

24  standard for amendment.  *See e.g., Apple, Inc. v. Samsung Electronics Co., Ltd.* Case No. 12-

25  CV-0630-LHK (PSG) (N.D. Cal., June 26, 2013) ("the patent local rules recognize that

26  because [parties] must provide their theories early in the case, situations arise that require

27  adjustment of those contentions.  But absent a change in circumstances (and the diligence of

28  the party who needs to amend), a change in theory after the case has progressed is

1    unjustified.")  *See also Cap Co. Ltd. v. McAfee, Inc.*, Case No. 14-cv-05068-JD (N.D. Cal.

2    August 10, 2015) (allowing a "single amendment" as a one time exception to the usual rules"

3    before claim construction, while cautioning the patent owner that it would be strictly held to

4    the infringement theories disclosed in its infringement contentions for the rest of the case".)

5         "Good cause under the local rules is subject to a two-part inquiry, which considers

6    whether: (i) the moving party has shown diligence in amending its contentions, and (ii) the

7    non-moving party will not suffer undue prejudice." *Collaborative Agreements, LLC v. Adobe*

8    *Sys. Inc.*, 2016 WL 1461487, at *4 (N.D. Cal. Apr. 14, 2016) (internal quotation marks, edits,

9    and footnote omitted). "Diligence is 'the critical issue' in the good cause determination." *Karl*

10   *Storz Endoscopy-Am., Inc. v. Stryker Corp. ("Karl Storz II")*, 2016 WL 2855260, at *3 (N.D.

11   Cal. May 13, 2016) (*quoting Sunpower Corp. Sys. v. Sunlink Corp.*, 2009 WL 1657987, at *1

12   (N.D. Cal. June 12, 2009)).

13        To demonstrate it acted diligently, a party must show "(1) diligence in discovering the

14   basis for amendment; and (2) diligence in seeking amendment once the basis for amendment

15   has been discovered." *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, 2017 WL 732896, at

16   *3 (N.D. Cal. Feb. 24, 2017). The moving party bears the burden of showing diligence. *Apple*

17   *Inc. v. Samsung Elecs. Co.*, 2012 WL 5632618, at *2 (N.D. Cal. Nov. 15, 2012); *see also*

18   *Radware, Ltd. v. A10 Networks, Inc.*, 2014 WL 3725255, at *1 (N.D. Cal. July 28, 2014)

19   ("'The burden is on the movant to establish diligence rather than on the opposing party to

20   establish lack of diligence.'" (*quoting Karl Storz Endoscopy–Am., Inc. v. Stryker Corp. ("Karl*

21   *Storz I")*, 2011 WL 5574807, at *1 (N.D. Cal. Nov. 16, 2011))).

22        "Courts generally have granted leave to amend following a claim construction order

23   where the moving party's proposed amendments addressed a construction that neither party

24   proposed . . . ." *Slot Speaker Techs., Inc. v. Apple, Inc.*, 2017 WL 1278744, at *4 (N.D. Cal.

25   Apr. 6, 2017) (collecting cases).  "Courts have allowed amendments when the movant made

26   an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or

27   where there was ample time left in in discovery."  *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No.

28   12-CV-0630-LHK (PSG), 2012 WL 5632618, at *5 (N.D. Cal. Nov. 15, 2012).

"The local patent rules in the Northern District of California ... require[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365–66 (Fed. Cir. 2006). Patent "Local Rule 3-6 serves to balance the parties rights to develop new information in discovery along with the need for certainty in legal theories at the start of the case." *Slot Speaker Techs., Inc. v. Apple, Inc.*, 2017 WL 1278744, at *2 (N.D. Cal. Apr. 6, 2017) (internal quotation marks omitted).

This case is in a posture very similar to that addressed in *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, 2017 WL 732896, at *3 (N.D. Cal. Feb. 24, 2017). In the *Advanced Micro* case, the Court stayed the action approximately six months after the plaintiffs served their infringement contentions. At the time of the stay, the Court had not yet held a Markman hearing, and had not set deadlines for the close of discovery or a trial date. The Court subsequently lifted the stay eighteen months later and plaintiffs sought leave to amend their infringement contentions to increase the number of accused products from 327 to 821 and the number of representative claim charts from 52 to 73. *Id*. at *2. The defendant opposed amendment by contending that the plaintiffs could not demonstrate diligence because they failed to seek amendment while the case was stayed pending IPR proceedings.

The Court rejected the defendant's argument concluding that "[c]ontinuing to work on stayed proceedings would have been a waste of time and resources", particularly when the defendant sought to invalidate and ultimately did invalidate in the IPR proceedings several of the asserted claims. *Id*. at *3 and fn. 5. The Court also rejected the defendant's claims that it would be prejudiced because the amendments (1) materially expanded the size and complexity of the case; (2) significantly changed the infringement theories; and (3) would unduly burden the Court and a jury. *Id*. at *4-5. The Court concluded that because the case was "still young procedurally", there was plenty of time to address the new theories, "regardless of how disruptive they are." *Id*. The Court also noted that addressing the new claims in the same

1    action was more efficient and likely less burdensome than having to defend the claims in

2    another action.  *Id.*

3         Comparing *Advanced Micro Devices*, with the present case, the facts here are far more

4    compelling, namely: (1) the case was stayed at a very early stage, (2) the stay is still in

5    place,(3) the proceedings in the PTO are ongoing, (4) the final claim scope is not known, and

6    (5) the proposed amendments are not nearly as involved – the plaintiff was granted leave to

7    increase the number of accused products from 327 to 821 and the number of representative

8    claim charts from 52 to 73.

9         The Court's decision in *Corel Software, LLC v. Microsoft Corporation*, 2018 WL

10   5792323 (D. Utah 2018) similarly supports amendment.   In *Corel*, the Court stayed an

11   infringement action pending the outcome of the defendant's IPR petition of the patents-in-suit

12   after the plaintiff had served its preliminary and final infringement contentions under the

13   Court's local rules.  After the PTO instituted review of some claims in one of the patents-in-

14   suit (the "'996" Patent), the plaintiff canceled those patent claims in the '996 Patent to prevent

15   delay of the suit.  After the PTO resolved all pending issues, the Court lifted the stay and the

16   plaintiff sought leave to substitute two new and unasserted claims in the '996 Patent in place

17   of the canceled claims it had previously asserted in its initial and final infringement

18   contentions.

19        Like this Court's local rules, the *Corel* Court's local rules provided as an example of a

20   circumstance supporting a finding of good cause for amendment the situation where the court

21   adopts a claim construction of the patent that is different from that proposed by the moving

22   party.    The plaintiff contended that the PTO's expression of skepticism regarding the

23   patentability of claims in the '996 Patent identified in Plaintiff's infringement contentions

24   provided good cause for the amendment.  Specifically, the plaintiff contended that the PTO's

25   indication that some of its asserted claims in the '996 Patent were likely to be invalidated by

26   the PTO provided good cause to substitute other unasserted claims from the '996 Patent that

27   were likely to survive an invalidity challenge.  The *Corel* Court agreed and expressly found

28   that the PTO's unfavorable analysis of the asserted claims was the type of adverse litigation

1   development contemplated by the local rule that provided good cause for amendment.  *Id*. at *

2   2.  The *Corel* Court also rejected the defendant's claims of prejudice.  The court concluded

3   that neither the additional work nor expense posed by the amendment created undue prejudice.

4   *Id*. at *3.  Because there was no evidence that the timing of the amendment would prevent the

5   defendant from pursuing or completing discovery of an available defense, the defendant could

6   not establish any undue prejudice.  *Id*.

7        Like the Plaintiffs in the *Advanced Micro* and *Corel* cases, Capella can demonstrate

8   that it has been diligent in seeking amendment after the surprising claim construction given to

9   the Patents-in-Suit by the PTO.  The case is still presently stayed and a prior motion for leave

10  to amend would have been a waste of resources.  There is also no prejudice to Defendants: the

11  case is in its early stages and Capella's request for leave to amend is not motivated by any

12  gamesmanship but instead has been made necessary solely by the PTO's unanticipated rulings.

13  Finally, Defendants will face Capella's amended claims in some action and there is no

14  legitimate reason to force Capella to file an entirely new action in light of the infancy of this

15  one.

16       **C.    There Are No Grounds to Dismiss Capella's Claims or to Enter**
         **Judgment.**

17

18            1.    There Is No Sound Basis to Dismiss the Action.

19       Defendants have previously contended that the PTO's invalidation of some but not all

20  of the claims in the Patents-in-Suit requires the Court to dismiss Capella's actions.

21  Specifically, Defendants argued that the Reissue Applications are insufficient to maintain

22  jurisdiction over this matter, citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S.

23  800, 807-08 (1988) ("[I]n order to demonstrate that a case is one 'arising under' federal patent

24  law 'the plaintiff must set up some right, title or interest under the patent laws....'") and

25  *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A]n actual controversy must be extant at all

26  stages of review, not merely at the time the complaint is filed.").  But Capella has never

27  asserted the Reissue Applications alone as a basis for continuing subject matter jurisdiction.

28  Instead, Capella contends that this Court continues to have subject matter jurisdiction based on

the ongoing controversy concerning infringement and validity of the Patents-in-Suit.  In its complaints, Capella asserted infringement of the patents and defendants asserted invalidity without reference to any specific numbered claims.  (See e.g. Amended Complaint at Dkt. #30, at ¶¶ 3, 9, 10, 20 and 26.)  Many of the claims in the Patents-in-Suit were not the subject of any IPR and remain valid.  And, as discussed above, Capella seeks leave to add Additional Dependent Claims to its infringement contentions.  Capella retains the right to assert such claims and this Court obviously has jurisdiction over such claims under 28 U.S.C. 1138(a).

The closest case on the issue of mootness that Capella has found is *Target Training Intl., Ltd. v. Extended Disc N.A., Inc.*, 645 Fed.Appx 1018 (April 22, 2016), where the district court dismissed an action *following* a reexamination at the PTO.  All of the eleven (11) original claims of the patent were invalidated in the reexamination proceedings.  The plaintiff patent holder ("TTI") had provided infringement contentions alleging infringement of original claims 1, 2 and 5-11, but not claims 3 and 4.  After the district court issued a stay pending completion of the reexamination proceedings, the PTO issued a reexamination certificate cancelling all original claims 1-11, but issuing thirty new claims—claims 12 through 41—and confirming those claims as patentable.  The Federal Circuit affirmed the PTO with a Rule 36 affirmance, as in the present case.  Thereafter, the district court reopened the case and the defendants moved to dismiss the action as moot.  The court granted the motion because all of the eleven original claims were held unpatentable and none of the new claims from the reexamination were part of the patent at the time the complaint was filed.  In addition, TTI, unlike Capella, had not sought leave to amend its contentions.  *Id*. at *1023.

On Appeal, the Federal Circuit agreed with the District court as to the original claims that were cancelled in the reexamination.  The Federal Circuit found the "suit moot to the extent those were the only claims asserted in the litigation." *Id*. at *1023.  As to the new claims from the reexamination, the Federal Circuit indicated that it agreed that the suit would not be mooted as to "substantially identical" new claims, and also agreed that new claims that were not substantially identical could be pursued, but held that the dismissal was appropriate

17

1   "[b]ecause TTI failed to assert the newly added claims, despite opportunities to do so…" after

2   the reexamination certificate issued. *Id*. at *1025.

3       Although the facts are similar, the present action is distinguishable.  Here, the original

4   action for patent infringement and the co-pending counterclaims remain at issue.  Although a

5   number of claims were invalidated, a number of original claims from the patent-in-suit were

6   not invalidated, Capella has provided Notice of Infringement of original claims herein, and

7   seeks leave to amend its contentions when the stay is lifted.

8       <center>2.    There Is No Sound Basis to Enter Judgment.</center>

9       Defendants similarly have contended that the Court should enter "final judgment in

10  favor of each of the Defendants and against Capella on Capella's claims for infringement of

11  the '368 and '678 Patents."  (See Joint Status Report (Dkt # 196) at p. 4:20-23.)  Notably,

12  Defendants are silent about Ciena's pending counterclaims.  A "final judgment" for purposes

13  of 28 USC § 1291 is a ruling that terminates the action on the merits, leaving nothing for the

14  court to do but execute the judgment. *See Gelboim v. Bank of America Corp.* (2015)  US  , 135

15  S.Ct. 897, 902; *see also Catlin v. United States* (1945) 324 U.S. 229, 233, 65 S.Ct. 631, 633;

16  and *HSBC Bank USA, N.A. v. Townsend*, 793 F3d 771, 775 (7th Cir. 2015). A court order that

17  leaves issues unresolved is not a final judgment. "A final judgment is one which ends the

18  litigation on the merits and leaves nothing for the court to do but execute the judgment." *Riley*

19  *v. Kennedy* (2008) 553 US 406, 419, 128 S.Ct. 1970, 1981 (internal quotes omitted)—order

20  leaving unresolved request for relief was not final; *HSBC Bank USA, N.A. v. Townsend*, supra,

21  793 F3d at 776—if resolution of issue will either alter order or moot or revise resolution of

22  case, no finality (because damages are part of judgment and necessary for finality, lack of

23  calculated damages rendered court's decision nonfinal and thus not appealable).  Because

24  Ciena's counterclaim seeking to declare the Patents-in-Suit invalid remains pending, there is

25  no basis to enter judgment in this matter.

26  **D.    Notice of Infringement of Additional Dependent Claims.**

27      In its Preliminary Infringement Contentions, for each defendant, Capella provided

28  Preliminary Infringement Contentions for Claim 1 of each patent-in-suit.  Capella hereby

1  provides notice of infringement of Additional Dependent Claims, including at least original

2  claim 13 of the '368 patent and original claim 12 of the '678 patent.  These claims each

3  depend from claim 1 of their respective patents and Capella refers each Defendant to the

4  Preliminary Infringement Contentions for those claims (claim 1 of each of the '368 and '678

5  patents).

6  Claim 13 of the '368 further specifies that the beam-deflecting elements from claim 1

7  of the '368 patent comprise "micromachined mirrors."  Capella contends that the beam-

8  deflecting elements from claim 1 also meet the micromachined mirror limitations of claim 13.

9  Claim 12 of the '678 patent further specifies that the channel micromirrors of claim 1

10  are "silicon micromachined" mirrors.  Capella contends that micromirrors from Claim 1 also

11  meet the silicon micromachined limitations of Claim 1.

12  **IV.    CONCLUSION**

13  Based on the foregoing, the Court should keep the current stay in effect.  Alternatively,

14  if the Court intends to lift the stay, Capella should be granted leave to amend its Preliminary

15  Infringement Contentions.

16

17  Dated:  February 14, 2019        MANATT, PHELPS, & PHILLIPS, LLP

18              By: */s/ Robert D. Becker*
                Robert D. Becker
19              Attorneys for Plaintiff
                *Capella Photonics, Inc.*

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2019, I served the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

*/s/ Robert D. Becker*
Robert D. Becker

322422643.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

REQUEST TO MAINTAIN CURRENT STAY                     NO. 3:14-CV-03348-EMC