1   (Counsel information listed on signature page)

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CAPELLA PHOTONICS, INC., | Lead Case No. 3:14-cv-03348-EMC |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST TO MAINTAIN STAY ON ACTION OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS** |
| v. | |
| CISCO SYSTEMS, INC., | |
| Defendant. | **Hearing Date:** March 7, 2019<br>**Time:** 1:30 p.m.<br>**Courtroom:** 5<br>**Judge:** Hon. Edward M. Chen |
| CAPELLA PHOTONICS, INC., | No. 3:14-CV-03349-EMC (related case) |
| Plaintiff, | |
| v. | |
| FUJITSU NETWORK COMMUNICATIONS, INC., | |
| Defendant. | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| CAPELLA PHOTONICS, INC., | No. 3:14-CV-03350-EMC (related case) |
| Plaintiff, | |
| v. | |
| TELLABS OPERATIONS, INC. AND CORIANT (USA) INC., | |
| Defendants. | |
| CAPELLA PHOTONICS, INC., | No. 3:14-CV-03351-EMC (related case) |
| Plaintiff, | |
| v. | |
| CIENA CORPORATION, | |
| Defendant. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page**

I.   Introduction ........................................................................................................ 5

II.  Factual and Procedural Background ................................................................... 6

    A.   February–July 2014: Plaintiff files its complaints and serves infringement contentions identifying the Asserted Claims .......................................... 6

    B.   July 2014: Defendants file IPR petitions and the Southern District of Florida transfers the cases to this Court ............................................... 6

    C.   July 2014-March 2015: The Court instructs Plaintiff to seek leave to amend its infringement contentions if it has additional theories, Defendants complete their production of technical documents, and the PTAB institutes the IPRs ...................................................................... 7

    D.   March 2015-February 2018: The Court stays the cases, the PTAB finds the Asserted Claims unpatentable, and Plaintiff appeals the PTAB's decisions .......... 8

    E.   February–December 2018: The Federal Circuit affirms the PTAB's decisions, and Plaintiff (1) files the Reissue Applications and (2) petitions the Supreme Court to review and reverse the PTAB's decisions ......................... 8

    F.   December 2018–January 2019: The Supreme Court denies Plaintiff's petition, the PTO cancels the Asserted Claims, and Plaintiff informs this Court that it believes Defendants infringe unasserted claims ................. 9

    G.   February 2019: Plaintiff moves to only amend its infringement contentions and maintain the stay of these cases ................................... 10

III. Argument ........................................................................................................... 11

    A.   Plaintiff has not shown good cause for amending its infringement contentions to add previously unasserted claims from the asserted patents ......... 11

        1.   Plaintiff has failed to diligently move for leave to amend its infringement contentions ..................................................................... 11

        2.   Defendants would be prejudiced if Plaintiff amended its infringement contentions at this late stage to add newly asserted claims ................ 16

    B.   The Court should not continue the stay pending the reissue applications ............ 17

        1.   The Reissue Applications are not property rights that are ripe for judicial determination .......................................................................... 17

        2.   The stay factors weigh against continuing the stay ................................ 18

    C.   The Court should dismiss these cases with prejudice ......................................... 20

i

1.   Plaintiff has failed to prosecute the remaining claims in the
Asserted Patents ......................................................................................... 21

2.   The failure to prosecute factors support dismissal with prejudice ........... 22

IV.   Conclusion.................................................................................................................... 25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4
*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
No. 14-cv-01012-SI, 2017 WL 732896 (N.D. Cal. Feb. 24, 2017)................................14, 15, 16

5

6
*Aircraft Tech. Publishers v. Avantext, Inc.*,
No. C 07-4154 SBA, 2009 WL 3833545 (N.D. Cal. Nov. 16, 2009) ...........................21, 23, 24

7
*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
No. 10-CV-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011)....................................18

8

9
*Bush v. Anton*,
No. C 08-3459 JF (RS), 2009 WL 189041 (N.D. Cal. Jan. 23, 2009) .....................................24

10
*Corel Software, LLC v. Microsoft Corp.*,
2:15-CV-00528-JNP-PMW, 2018 WL 5792323 (D. Utah Nov. 5, 2018) ....................14, 15, 16

11

12
*Douglas Dynamics, LLC v. Meyer Prods. LLC*,
No. 14-cv-886-jdp, 2017 WL 1382556 (W.D. Wis. Apr. 18, 2017) ...................................17, 24

13
*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988) ..............................................................................................18

14

15
*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,
No. C-13-4513-RMW, 2014 WL 819277 (N.D. Cal. Feb. 28, 2014) ......................................18

16
*Grecia v. Adobe Inc.*,
No. 16-cv-06283-YGR, 2018 WL 6523983 (N.D. Cal. Dec. 12, 2018) .............................16, 23

17

18
*Interwoven, Inc. v. Vertical Computer Sys., Inc.*,
No. C 10-04645 RS, 2012 WL 761692 (N.D. Cal. Mar. 8, 2012) ...........................................18

19
*Magna Elecs., Inc. v. TRW Automotive Holdings Corp.*,
No. 1:12-cv-654, 2015 WL 11422304 (W.D. Mich. Nov. 23, 2015)..................................21, 22

20

21
*Morris v. Morgan Stanley & Co.*,
942 F.2d 648 (9th Cir. 1991).................................................................................................24

22
*Network Appliance Inc. v. Sun Microsystems Inc.*,
No. C-07-06053 EDL, 2008 WL 2168917 (N.D. Cal. May 23, 2008) ....................................18

23

24
*Nken v. Holder*,
556 U.S. 418 (2009) ...............................................................................................................18

25
*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006)..........................................................................................12, 23

26

27
*Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.*,
731 F.2d 818 (Fed. Cir. 1984)...........................................................................................19, 20

28

iii

*Telemac Corp. v. Teledigital, Inc.*,
    450 F. Supp. 2d 1107 (N.D. Cal. 2006) ...................................................................................18

*Texas v. United States*,
    523 U.S. 296 (1998) ...................................................................................................................17

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) ...................................................................................................................17

*Trans Video Elecs., Ltd. v. Sony Elecs.*,
    278 F.R.D. 505 (N.D. Cal. 2011) ..................................................................................11, 12, 16, 24

*Viskase Corp. v. Am. Nat'l Can Co.*,
    261 F.3d 1316 (Fed. Cir. 2001) ..................................................................................................18

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999) ................................................................................................22, 23


**STATUTES**

35 U.S.C. § 251 ...........................................................................................................................19

35 U.S.C. § 252 .....................................................................................................................19, 20

35 U.S.C. § 315 .............................................................................................................14, 16, 24


**REGULATIONS**

37 C.F.R. § 42.17 .........................................................................................................................17

37 C.F.R. § 42.73 .........................................................................................................................19


**RULES**

Fed. R. Civ. P. 41 ............................................................................................................20, 21, 22

Patent L.R. 3-4 ...................................................................................................................... *passim*

Patent L.R. 3-6 .....................................................................................................................11, 22

1

## I.   INTRODUCTION

2          The Patent Trial and Appeal Board ("PTAB") has invalidated all of the patent claims that

3   Plaintiff timely asserted in this case.  Because those claims no longer exist, and because Plaintiff

4   failed to timely assert other claims, the Court should dismiss these cases with prejudice.  Neither

5   of Plaintiff's excuses—new reissue applications or a belated and threadbare motion to amend its

6   infringement contentions—should prevent the immediate dismissal of these cases in their entirety.

7          *First*, Plaintiff's reissue applications are not an enforceable property right and do not

8   provide a basis for continuing the stay.  The patent claims pending in the reissue applications may

9   be subject to amendment during prosecution or may never even issue at all.  These patent claims

10  are not ripe, would issue, if at all, as different patents, and are not before the Court.  Indeed,

11  Plaintiff did not in its proposed claim charts include any of the claims that it has asked the Patent

12  and Trademark Office ("PTO") to reissue with Plaintiff's proposed amendments.

13         *Second*, Plaintiff's motion fails to show good cause to amend its infringement contentions.

14  Plaintiff's motion seeks to add previously unasserted dependent claims but—despite the Court's

15  clear instructions to do so—fails to compare these new claims to previously asserted claims, fails

16  to explain when the basis for this amendment was discovered, fails to explain why this amendment

17  was not brought earlier, and fails to address the enormous burden such an amendment would place

18  on Defendants.  Plaintiff's proposed amendments even inexplicably attempt to add a dependent

19  claim that *was cancelled by the PTAB during the IPR proceedings*.  Plaintiff has not sought leave

20  to amend its complaints and all parts of Plaintiff's causes of action that Plaintiff chose to prosecute

21  have been resolved against Plaintiff.

22         Plaintiff failed to prosecute the claims it now proposes to add.  Plaintiff's infringement

23  counts were not limited to specific patent claims and Plaintiff never elected to provide

24  infringement proof for, or to litigate in any way, the remaining claims of the patents-in-suit—

25  indeed, Plaintiff (i) formally elected exactly the opposite, (ii) withheld proof (or even allegations)

26  of infringement for the remaining claims of the asserted patents, and (iii) reaffirmed at various

27  points throughout this case its election not to prosecute the remaining claims.  Plaintiff offers no

28  excuse for failing to provide infringement proof or allegations for the remaining claims of the

5

asserted patents, and there is no excuse.  The Court should hold Plaintiff to the decision(s) it made years ago to not prosecute the remaining claims.  All counts and all patent claims in the patents-in-suit should be dismissed with prejudice and final judgment should be entered in Defendants' favor.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   February–July 2014: Plaintiff files its complaints and serves infringement contentions identifying the Asserted Claims

Plaintiff filed individual cases against Defendants in the Southern District of Florida in 2014.  *See*, Docket No. 1.[1]  Plaintiff's Complaints alleged that each respective Defendant infringed U.S. Patent Nos. RE42,368 (the "'368 Patent") and RE42,678 (the "'678 Patent") (collectively, the "Asserted Patents"), without identifying any particular claim or claims as allegedly infringed.  *See id.* at 4–6; *see also* Docket No. 30 at 4–6 (Amended Complaint).  In a case management order, the Southern District of Florida ordered Plaintiff to file infringement contentions identifying "[e]ach claim of each patent-in-suit allegedly infringed by each party" (Docket No. 16 at 2), and Plaintiff thereafter accused Defendants of infringing claims 1–4, 9, 10, 13, 17, 19–23, 27, 29, 44–46, 53, and 61–65 of the '678 Patent, and claims 1–6, 9–12, and 15–22 of the '368 Patent (collectively, the "Asserted Claims") (Docket. No. 25 at 2).  Defendants thereafter served invalidity contentions in reliance on Plaintiff's election of patent claims for the case.  *See* Docket No. 39.

### B.   July 2014: Defendants file IPR petitions and the Southern District of Florida transfers the cases to this Court

On July 15, 2014, a Defendant filed the first petition with the PTAB, seeking institution of *Inter Partes* Review ("IPR") proceedings on the Asserted Claims.  *See* Ex. 1 at 1 (document 5); *see also* Ex. 2 (second IPR ptetition) at 1 (document 5).  Defendants moved to transfer venue, and shortly thereafter the Southern District of Florida granted the motions and transferred the cases to the Northern District of California.[2]  (Docket No. 77).

---

[1] All "Docket No." citations are to the docket in *Capella Photonics, Inc. v. Cisco Systems, Inc.*, No. 3:14-cv-03348 (N.D. Cal.), which was identified as 1:14-cv-20529-PAS while the case was pending in the Southern District of Florida.  There are similar docket entries in the companion consolidated cases.

[2] The motions to transfer were not based on or otherwise related to the IPR petitions.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST
TO MAINTAIN STAY OR FOR LEAVE TO AMEND

CASE NO. 3:14-CV-03348-EMC

**C.      July 2014-March 2015: The Court instructs Plaintiff to seek leave to amend its infringement contentions if it has additional theories, Defendants complete their production of technical documents, and the PTAB institutes the IPRs**

In August 2014, the Court served its standing order, directing the parties to "follow the Federal Rules of Civil Procedure, the Civil Local Rules, and the General Orders of the Northern District of California . . . [,]" and noting that "[a]ny failure to comply with any of these rules and orders may be deemed sufficient grounds for . . . dismissal, entry of default judgment, or other appropriate sanctions."  Docket No. 88 at 1.  The Court held a case management conference in September 2014, during which Plaintiff admitted that, with respect to the PTAB's IPR proceedings, "I think – the case would be over if the patents were invalidated."[3]  Docket No. 112 at 14:1–2.   Thereafter,[4] the parties submitted a joint discovery plan and several joint case management statements, proposing dates certain by which Plaintiff must seek leave to amend its infringement contentions.  *See* Docket No. 117 at 3; Docket No. 134 at 11.  Those dates all came and went, long ago.  At a case management conference on December 18, 2014, Plaintiff argued that it might amend its infringement contentions to add a new theory, and the Court cautioned Plaintiff that it first needed to meet and confer, file a motion, and satisfy the requirements of the Local Patent Rules:

> **THE COURT:** Well, you know, I haven't seen the clarity. I'm not going to make any judgment on that. All I can tell you is that, number one, you've got infringement contentions. They're on the papers.
>
> Number two, we're going to be governed by these infringement contentions, because that triggers a lot of other things, including defining the scope of discovery at this point.
>
> If you feel you've been dealt with in a way that's not forthright, and you're therefore entitled to amend your infringement contentions, you can mange [sic] that motion. You meet and confer first, and see what you can work out. And then we'll have to do it by motion.
>
> **MR. BECKER:** Okay.

Docket No. 148 at 50:20–51:8.  But, Plaintiff did not seek a meet and confer and never filed a

---

[3] Toward the end of the conference, Plaintiff did leave open the possibility that additional discovery could show "infringement of patents and claims that are not in the IPR."  *Id.* at 27:7–10.

[4] The Parties had earlier proposed a similar schedule with their joint case management statement. *See* Docket No. 107 at 18 (App'x A).

motion to amend its infringement contentions before the Court granted a stay.  Plaintiff has never even suggested it has been dealt with unfairly.  Defendants completed their Patent L.R. 3-4 productions by November 16, 2014, which included technical documentation sufficient to show the operation of aspects of the accused instrumentalities identified in Plaintiff's infringement contentions.  *See* Docket No. 122 at 1:19.

In January and February 2015, the PTAB instituted IPRs on the Asserted Claims.  *See* Ex. 1 at 1 (document 11); Ex. 2 at 1 (document 11).

**D.      March 2015-February 2018: The Court stays the cases, the PTAB finds the Asserted Claims unpatentable, and Plaintiff appeals the PTAB's decisions**

The Court stayed these cases in March 2015, pending the PTAB's IPR proceedings.  *See* Docket No. 172.  Beginning in early 2016, the PTAB issued final written decisions finding the Asserted Claims unpatentable as obvious in view of the prior art.  *See* Exs. 1 at 3 (document 47); Ex. 2 at 3 (document 43).  In its decisions, the PTAB explicitly construed "port" limitations found in the Asserted Claims as encompassing both collimator *and non-collimator ports* (including circulator ports).  Exs. 3 at 12–14; Ex. 4 at 14–16.  Plaintiff appealed these decisions to the Federal Circuit in July 2016.  *See* Exs. 5 & 6

**E.      February–December 2018: The Federal Circuit affirms the PTAB's decisions, and Plaintiff (1) files the Reissue Applications and (2) petitions the Supreme Court to review and reverse the PTAB's decisions**

The Federal Circuit affirmed the PTAB's final written decisions in February 2018 (Ex. 7) and issued its mandate in April 2018 (Ex. 8).  On June 29, 2018, Plaintiff filed applications with the Patent and Trademark Office ("PTO") for reissue of the Asserted Patents (the "Reissue Applications").  *See* Ex. 9 at 7–8; Ex. 10 at 7.  Plaintiff certified under penalty of perjury that it filed the Reissue Applications because it had "claim[ed] more or less than [it] had the right to claim in the [Asserted Patents]."  Exs. 11 at 1; Ex. 12 at 1.  Plaintiff amended *each and every* independent claim (and some dependent claims) to limit "port" limitations to a "fiber *collimator*" *port*.[5]  *See* Ex. 13 at 3, 5–6, Ex. 14 at 3, 7–14.  Plaintiff has argued that the PTO should allow the

---

[5] In independent claims that did not already include a "port" limitation, Plaintiff added a "fiber *collimator*" port limitation.  *See, e.g.*, Ex. 13 at 6 (draft claim 17).

Reissue Applications because "the new claims in this application narrowly define the term "port[]"

and therefore "*exclude circulator ports*[.]"  Ex. 1 at 14, 14 at 21.  Plaintiff has recently admitted

that the Reissue Applications will "narrow[] the claims":

> MR. BECKER: Essentially, we argued to the Patent Office a certain narrow scope to the claims and the Patent Office, under its broadest reasonable interpretation standard—a standard this Court does not use -- found that the claims were not as narrow as we contended and they wanted to see express language that they said was not in the claims in order to find them that narrow. So we essentially, in summary, re-filed them with the certain terms made express that they found were not express.
>
> THE COURT: So it's narrowing of the claims, essentially, an express narrowing of the claims in order to --
>
> MR. BECKER: It would be narrowing only under the broadest reasonable interpretation standard, but not – some claims, definitely, are narrowed under any standard.
>
> THE COURT: Well, the claims language is different.
>
> MR. BECKER: The claim language is different.

Ex. 15 at 9.  The PTO has not yet acted on the Reissue Applications (*see id.*) (*see* Exs. 16 & 17).

Patents that are ultimately issued from applications assigned to this examiner are prosecuted for,

on average, 2.5 years.  *See* Ex. 18 at 2.

    Two months after filing the Reissue Applications, on September 6, 2018,[6] Plaintiff

petitioned the Supreme Court to review and reverse the PTAB's decisions that found the Asserted

Claims unpatentable.  *See* Ex. 19 at 1.

**F.      December 2018–January 2019: The Supreme Court denies Plaintiff's petition, the PTO cancels the Asserted Claims, and Plaintiff informs this Court that it believes Defendants infringe unasserted claims**

    The Supreme Court denied Plaintiff's petition on November 5, 2018.  *See id.*  On

December 10, the PTAB issued IPR certificates, cancelling the Asserted Claims.  Exs. 20 & 21.

The parties filed a Joint Status Report on December 28, in which Plaintiff argued that the Court

should maintain the stay in these cases because "its [Reissue Applications] remain pending and

---

[6] The day before it filed the Reissue Applications, Plaintiff filed a motion with the Supreme Court, asking for an extension of time on its deadline to petition for a writ of certiorari.  *See id.*  The Supreme Court granted this motion.  *See id.*

9

original unchallenged claims from the Patents-in-Suit remain unaffected by the IPRs."  Docket No. 196 at 5.  At the January 17 case management conference, Plaintiff contended that (1) Defendants are infringing unasserted claims from the Asserted Patents, and (2) Defendants will infringe claims from the Reissue Application (assuming they issue).  *See* Ex. 15 at 5.  The Court instructed Plaintiff—to the extent it wanted to assert previously unasserted claims from the Asserted Patents or anticipated claims from the reissue applications—to move to amend.  *See id.* at 15:13–24, 17:15–19:7.  The Court also instructed Plaintiff that it must move to amend its infringement contentions if it intended to assert previously unasserted claims.[7] *See id.* at 15:13–24. The Court also specifically informed Plaintiff about what it expected to see in any such motion to amend:

> THE COURT: I mean, I see more than just a motion for leave to amend.  I need to see what it is you're asking for because part of what ***I'm going to look at is how different is this, could it have been brought earlier, why wasn't it brought earlier, how much more of a burden is this going to be on the parties, is there prejudice resulting from now this late amendment*** . . . .

*Id.* at 17:3–7 (emphasis added).

### G.    February 2019: Plaintiff moves to only amend its infringement contentions and maintain the stay of these cases

On February 14, 2019—five years after filing its complaints and serving its original infringement contentions, four years after Defendants produced technical documents pursuant to Patent L.R. 3-4, three years after the PTAB found the Asserted Claims unpatentable, and over seven months after filing the Reissue Applications—Plaintiff moved to (1) amend its infringement contentions and to (2) maintain the stay of these cases.  *See* Docket No. 205.  Plaintiff did not move to amend its complaints.  *See id.*

Plaintiff moved to amend its infringement contentions to add two previously unasserted dependent claims: Claim 13 of the '368 Patent, *which (astonishingly) has already been held unpatentable* (Ex. 20 at 2), and Claim 12 of the '678 Patent.  Docket No. 205 at 19.  Plaintiff

---

[7] The Court also instructed Plaintiff that it must move to amend its complaints if it intended to do so.  *See id.*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST
TO MAINTAIN STAY OR FOR LEAVE TO AMEND

CASE NO. 3:14-CV-03348-EMC

described these previously unasserted dependent claims as "merely an extension of the Preliminary Infringement Contentions that [it] previously asserted for the claims on which they depend[.]" *Id.* at 2:25–3:3 (citation omitted).   The claim charts that Plaintiff served with its motion, however, do not chart these claims against all Defendants and include additional dependent claims not identified in the body of Plaintiff's motion.  *See* Docket No. 205-12 (Ex. K to Plaintiff's Motion).[8]

Plaintiff also asked the Court to grant it leave to "update the Preliminary Infringement Contentions for the previously asserted claims to conform them to Capella's Reissue Applications and the new reissue patents to be issued by the PTO at the conclusion of the reissue proceedings." Docket No. 205 at 3:4–6.  The charts that Plaintiff submitted did not address these pending claims at the PTO, and instead repeated its original contentions as to the canceled claims and provided threadbare contentions for the newly asserted claims.  *See* Docket No. 205-12 (Ex. K to Plaintiff's Motion).

## III.   ARGUMENT

### A.   Plaintiff has not shown good cause for amending its infringement contentions to add previously unasserted claims from the asserted patents

Plaintiff has not shown that it was diligent in moving to amend its infringement contentions.   Additionally, this amendment would significantly prejudice Defendants.   Plaintiff has therefore not shown good cause for amending its infringement contentions at this late stage.

1.   <u>Plaintiff has failed to diligently move for leave to amend its infringement contentions</u>

To amend its infringement contentions, Plaintiff must make "a timely showing of good cause."  Patent L.R. 3-6.  To do so, Plaintiff must "show[] diligence." *Trans Video Elecs., Ltd. v. Sony Elecs.*, 278 F.R.D. 505, 507 (N.D. Cal. 2011) (Chen, J.) (citations omitted).  "[I]f there is no

---

[8] Specifically, these charts also include dependent Claims 7 and 8 of the '368 Patent (*see id.* at ECF 10–11) for all defendants except Coriant.  For Coriant and the '368 Patent, Capella provided claim charts only for claims 1 and 2 of the '368 Patent, both of which were canceled by the PTAB. *See id.* at ECF 48–77.  For Fujitsu, Capella also included dependent Claim 2 of the '368 Patent, which was canceled by the PTAB (*see id.* at ECF 122–23), and for Tellabs, Capella included dependent claim 2 of the '678 Patent, which was cancelled by the PTAB (*see id.* at ECF 160–61).

showing of diligence, then a court need not entertain whether the amendment would prejudice the nonmoving party.  *Id.* at 508 (citations omitted).  "This approach [has been] approved by the Federal Circuit. . . ."  *Id.* (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006)).  Plaintiff has the burden to establish diligence.  *O2 Micro Int'l*, 467 F.3d at 1366.

Plaintiff did not explain why it failed to offer proof, or even allegations, of infringement of the unasserted claims at the beginning of the case, or later in the case after receiving Defendants' discovery.  Indeed, although Plaintiff has not even argued that it recently discovered any new information that would justify focusing on the unasserted claims at this late stage, Defendants made their Patent L.R. 3-4 productions over four years ago.  *See* Docket No. 122 at 1:19.  The Court warned Plaintiff multiple times throughout this case that Plaintiff would need to comply with the Court's rules to amend its infringement contentions, yet Plaintiff inexplicably waited until three years after the PTAB invalidated the Asserted Claims before taking any action to seek assertion of the unasserted claims.  The Court also explained to Plaintiff at the January 17 case management conference that it wanted to know whether Plaintiff's amendments "***could have been brought earlier***" and "***why wasn't it brought earlier***" (Ex. 9 at 17:3–7 (emphasis added)), yet Plaintiff failed to address either of these points in its motion, and therefore failed to establish diligence.  As explained below, however, Plaintiff could have and should have brought these amendments earlier if Plaintiff believed there was any merit in them (there is not)

   a.   *Plaintiff should have pursued the unasserted claims at the outset of the case if there was a perceived basis for doing so*

Plaintiff was not diligent because it started moving away from the remaining claims in the Asserted Patents very early in the case.  *See Trans Video*, 278 F.R.D. at 508 (finding that a plaintiff "knowingly assumed a risk in not advancing alternative theories at the outset of the lawsuit.").  Plaintiff knowingly assumed the risk that—if the PTAB cancelled all of its asserted claims—it would be unable to assert additional claims later in these cases.  Plaintiff does not cite any new documents—public or non-public—in the new claim charts that it submitted with its motion, and it has no excuse for its protracted delay in seeking amendment.  Plaintiff could have

1   discovered the basis for its theories via public information available before it even filed its case in

2   February 2014.  Plaintiff's own description of its amendment supports this inference: it claims in

3   its motion that these new contentions are "merely an extension of the Preliminary Infringement

4   Contentions that [it] previously asserted for the claims on which they depend[.]" Docket No. 205

5   at 2:25–3:3 (citation omitted).

                                      b.      *Plaintiff should have—at the latest—sought leave to amend shortly after Defendants made their production of technical documents under Patent L.R. 3-4 by November 2014*

8         As noted above, Plaintiff fails to even allege that its amendments are justified based on

9   newly discovered information, much less provide any supporting facts.  Even if Plaintiff had done

10  so, however, Defendants produced technical documents under Patent L.R. 3-4 by November 2014.

11  *See* Docket No. 122 at 1:19. At that point, Plaintiff had all the information about the operation of

12  Defendants' systems that it now has.  Plaintiff had ample opportunity to seek to amend its

13  contentions to assert the unasserted claims and has no excuse for failing to file its motion before

14  the stay was entered in March 2015.

                                        c.      *Plaintiff received—and ignored—numerous warnings that it should seek leave to assert the unasserted claims*

17        Over the last five years, both the PTAB and the Court gave Plaintiff numerous indications

that it should immediately seek leave to assert any remaining claims.  Plaintiff ignored all of these

warnings.  For example:

- Plaintiff could have sought leave after Defendants began filing their IPR petitions in July 2014.  *See* Ex. 1 at 1 (document 5); *see also* Ex. 2 (second IPR ptetition) at 1 (document 5).  Plaintiff should have appreciated the risk that the PTAB would find the asserted claims unpatentable in view of the prior art identified in the IPR petitions.

- Plaintiff could have sought leave after the Court warned Plaintiff on December 18, 2014 to move for leave to amend its infringement contentions if it felt that doing so was necessary.  *See* Docket No. 148 at 50:20–51:8.

- Plaintiff could have sought leave after the PTAB instituted the IPRs in January and

DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST
TO MAINTAIN STAY OR FOR LEAVE TO AMEND

CASE NO. 3:14-CV-03348-EMC

1    February 2015.[9]  *See* Exs. 22 & 23.  At this point, Plaintiff knew that Defendants

2    had already convinced the PTAB that the information presented in the IPR petitions

3    "show[ed] there [wa]s a reasonable likelihood that [Defendants] would prevail in

4    showing the unpatentability of the challenged claims."  *See* Exs. 22 at 2; 23 at 2.

5    • Plaintiff could have—at the *very* latest—moved for leave to amend its infringement

6    contentions in early 2016, after the PTAB issued its finding written decisions

7    finding the asserted claims unpatentable.  *See* Exs. 7 & 8.

8    Because it took no action in view of these repeated warnings, Plaintiff cannot show diligence in

9    seeking leave to amend its infringement contentions.  Plaintiff knew that it would have to seek

10   leave to amend its contentions to add new infringement theories (which includes new asserted

11   claims), and it knew even before the stay was entered of the ever-increasing likelihood that the

12   PTAB would find all of the asserted claims unpatentable.

13                    *d.       Plaintiff's cited cases are inapplicable*

14          Plaintiff cites two cases to justify its lack of diligence: *Advanced Micro Devices, Inc. v. LG*

15   *Elecs., Inc.*, No. 14-cv-01012-SI, 2017 WL 732896 (N.D. Cal. Feb. 24, 2017); and *Corel*

16   *Software, LLC v. Microsoft Corp.*, 2:15-CV-00528-JNP-PMW, 2018 WL 5792323 (D. Utah Nov.

17   5, 2018).  *See* Docket No. 205 at 14:9–16:15.  Plaintiff argues that these cases support

18   amendments to infringement contentions following a "surprising claim construction" from the

19   PTAB.[10]  Docket No. 205 at 16:7–9.  Both of these cases are inapplicable here, and neither

20   supports Plaintiff's proposition in the context of its motion for leave to amend.

21          In *Advanced Micro Devices*, the patent owner did not attempt to add new claims:  it

22   attempted to add new products.  2017 WL 732896, at *2.  The patent owner sought leave to add

23   new products based on its "labor-intensive analysis, whereby it worked with public sources and

---

[9] As discussed below, even if Plaintiff could show diligence, any such amendment would have prejudiced Defendants beginning in February 2015, one year after Defendants began receiving service of Plaintiff's complaint.  By this point, Defendants were barred from filing IPR petitions challenging the patentability of the unasserted claims.  *See* 35 U.S.C. § 315(b).

[10] As noted above, Plaintiff cannot claim "surprise" by any construction used by the PTAB. Plaintiff knew or should have known of the ever-increasing likelihood that the PTAB would cancel its asserted claims, beginning in July 2014.

cross-checked those sources against information from [another party] to most accurately supplement the infringement contentions." *Id.*  It alleged that "the process began in earnest shortly after the Court lifted the stay in this case." *Id.*  In this case, Plaintiff is not trying to accuse new products.  It is seeking to (1) assert claims that it was aware of when it filed this case (2) against products that it was aware of when it filed this case.  Plaintiff failed to submit any facts showing when it first learned of any new information that would justify this amendment.  Plaintiff failed to submit any facts showing that it worked diligently to prepare the proposed amendment.  Indeed, the amendments themselves indicate otherwise.  The new claims add simplistic limitations, and Plaintiff provides no meaningful analysis besides parroting the claim language. *See, e.g.*, Docket No. 205-12 (Ex. K to Plaintiff's Motion) at 9–10.  Plaintiff also seeks to assert Claim 13 of the '368 Patent (*see id.* at 10), which has already been *cancelled* by the PTAB as part of the IPRs (*see* Ex. 20 at 2).

In *Corel Software*—unlike here—the Court granted leave to add newly asserted claims only because the PTAB had found that a particular limitation from these claims was missing from the prior art.  There, the PTAB denied Microsoft's petition to institute an IPR on one of the asserted patents, reasoning that one of the claims "may be patentable because the identifying limitation of *hovering for a predetermined period of time* was not disclosed in the prior art . . . ." *Id.* (emphasis added).  Corel moved for leave to add two new claims from another patent that recited the same limitation that the PTAB found was missing from the prior art. *Id.*  The court found that good cause existed for this amendment because of the PTAB's "favorable analysis of the patentability[.]" *Id.*  Here, the PTAB's decisions do not provide a basis for asserting previously unasserted claims.  There is no indication that these claims would be patentable over the prior art.  Indeed, the record suggests the opposite.  Claim 13 of the '368 patent has already been found unpatentable. *See* Ex. 20 at 2.  And the only limitation added in Claim 12 of the '678 patent, "wherein each channel micromirror is a silicon micromachined mirror," is admitted in the specification to have been "known in the art."  Docket No. 205-3 (Ex. B to Plaintiff's Motion) at 4:22-25.  *Corel* does not support Plaintiff's position that it should simply be allowed to add new claims if the PTAB cancels asserted claims.  Patent owners should not be able to replace their

15

asserted claims after the PTAB issued an unfavorable decision absent—at a minimum—*some* indication from the PTAB that those particular newly asserted claims might be patentable.  Such a rule would render the PTAB's proceedings ineffectual and promote gamesmanship.

Accordingly, Plaintiff's attempt to rely on *Advanced Micro Devices* and *Corel Software* for the proposition that the PTAB's claim construction rulings justify this late amendment (*see* Docket No. 205 at 3:7–18) fails under scrutiny.  Plaintiff made a tactical decision at the beginning of the case to advance only the asserted claims and never changed its mind until now.  An adverse decision by the PTAB, without more, cannot justify adding new claims—especially when doing so would prejudice Defendants because of the expiration of the one-year bar.

2.    Defendants would be prejudiced if Plaintiff amended its infringement contentions at this late stage to add newly asserted claims

Because Plaintiff has not shown diligence, Defendants do not need to show prejudice. *Trans Video Elecs., Ltd.*, 278 F.R.D. at 508 (citations omitted).  However, Defendants are prejudiced because they prepared their IPR petitions based on Plaintiff's Asserted Claims.  *Grecia v. Adobe Inc.*, No. 16-cv-06283-YGR, 2018 WL 6523983, at *3 (N.D. Cal. Dec. 12, 2018) (finding the defendant prejudiced because it "relied upon plaintiff's representations regarding his alleged claims" in connection with parallel litigation).  Defendants began losing their abilities to file IPR petitions against the Asserted Patents in February 2015, a year after Plaintiff began serving its complaints.  35 U.S.C. § 315(b).  Defendants are prejudiced because they can no longer file IPR petitions that include the unasserted claims.  Defendants also have now spent years (at considerable financial and other expense) defending infringement charges based on entirely invalid patent claims.  Plaintiff has not offered to reimburse Defendants' substantial legal expenses even though it now asks the Court to restart a new infringement case after having failed in its first attempts.

Defendants are also prejudiced because Plaintiff could argue that Defendants are bound by IPR estoppel provisions and cannot assert invalidity arguments that they could have raised in the IPR.[11]  *See* 35 U.S.C. § 315(e)(2).  Plaintiff might specifically argue that Defendants cannot assert

---

[11] Defendants reserve the right to challenge any such argument.

invalidity arguments "based on prior art that could have been found by a skilled search's diligent search." *Douglas Dynamics, LLC v. Meyer Prods. LLC*, No. 14-cv-886-jdp, 2017 WL 1382556, at *5 (W.D. Wis. Apr. 18, 2017).  Assuming Plaintiff is successful, Defendants will have not only lost the ability to challenge the unasserted claims in the IPRs, but Plaintiff will argue that Defendants lost the ability to use prior art in this litigation that it could have used in the IPRs, *even for the claims that Defendants did not challenge in the IPRs* (specifically because Plaintiff chose not to assert them).

Finally, as mentioned above, Defendants have already incurred significant fees, costs, and disruption defending meritless infringement allegations and prosecuting (successfully) several IPR petitions.  Even if Defendants *could* file new IPR petitions, Defendants would still be prejudiced because they would have to duplicate these fees and costs.[12]

### B.      The Court should not continue the stay pending the reissue applications

Because the PTO has cancelled the Asserted Claims, there are no current property rights still at issue in this case and ripe for judicial determination (except for the unasserted claims of the currently Asserted Patents).  The Court should therefore lift the stay and, as discussed below, dismiss these cases with prejudice or enter judgment.  Regardless, even if the future contingent property rights *were* ripe for judicial determination, the factors weigh against continuing the stay.

#### 1.      The Reissue Applications are not property rights that are ripe for judicial determination

The patents that Plaintiff *hopes* will issue from the currently pending Reissue Applications are not property rights for purposes of this case.  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).  Plaintiff even admits that "it is not known what the final claims will look like."  Docket No. 205 at 2:7.  Plaintiff's request is not ripe because the PTO has

---

[12] The USPTO charges a filing fee of over $30,000 just for *filing* an already-completed IPR petition.  *See* 37 C.F.R. § 42.17(a).  This does not cover attorneys' fees, expert costs, and other expenses incurred in the actual preparation of the petition, or in the completion of the IPR process through final written decision.

1   not issued—and *may never* issue—the claims pending with the Reissue Applications.  Plaintiff

2   agrees that "the Reissue Applications alone" do not provide "a basis for continuing subject matter

3   jurisdiction."  *Id.* at 16:26–27.  Because the Reissue Applications do not provide a basis for

4   staying this case, consideration of the stay factors is unnecessary.

5               2.        The stay factors weigh against continuing the stay

6        Even if the Court were to consider the stay factors, these factors weigh against continuing

7   the stay in this case.  "Courts have inherent power to manage their dockets and stay proceedings,

8   including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc.*

9   *v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted).  "The burden is on the

10  party seeking the stay to persuade the court that a stay is appropriate."  *Evolutionary Intelligence,*

11  *LLC v. Sprint Nextel Corp.*, No. C-13-4513-RMW, 2014 WL 819277, at *2 (N.D. Cal. Feb. 28,

12  2014) (citing *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).  Some courts—including those in the

13  Northern District of California—have begun to shift away from any "liberal policy" favoring

14  motions to stay proceedings pending reexamination and reissuance proceedings before the PTO.

15  *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL

16  3267768, at *4 (N.D. Cal. July 28, 2011) (citing *Network Appliance Inc. v. Sun Microsystems Inc.*,

17  No. C-07-06053 EDL, 2008 WL 2168917, at *3 (N.D. Cal. May 23, 2008)).  "A court is certainly

18  not required to stay judicial resolution in light of a pending patent reexamination."  *Interwoven,*

19  *Inc. v. Vertical Computer Sys., Inc.*, No. C 10-04645 RS, 2012 WL 761692, at *2 (N.D. Cal. Mar.

20  8, 2012) (citing *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001)).

21  "Courts commonly analyze three factors when determining whether to grant a stay pending

22  reexamination: (1) whether discovery is complete and whether a trial date has been set, (2)

23  whether a stay will simplify the issues in question and trial of the case, and (3) whether a stay

24  would unduly prejudice or present a clear tactical disadvantage to the non-moving party."  *Avago*

25  *Techs.*, 2011 WL 4267768, at *4 (citing *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107,

26  1111 (N.D. Cal. 2006)).  "Case-specific equitable concerns are also often taken into account."  *Id.*

27               a.        *Factor 1: The stage of litigation weighs heavily against a stay*

28       The case that Plaintiff filed is over.  The PTAB has cancelled Plaintiff's asserted claims.

18

As part of that process, the PTAB construed the claims in view of the parties' claim construction positions and analyzed prior art.  This same activity would have taken place here had it not taken place before the PTAB.  The advanced stage of the parties' litigation involving these patents weighs heavily against a stay.

b. *Factor 2: The reissue applications will not simplify any issues in this case, which weighs against a stay*

Even if the PTO does ultimately issue new patents based on the Reissue Applications, the PTO's review will not simplify any issues in this case because any claims will be new.  The claims from the present patents will be "dead" (*Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 827 (Fed. Cir. 1984) (citing 35 U.S.C. § 252, ¶ 1)), and Plaintiff admits that "it is not known what the final claims will look like[]" (Docket No. 205 at 2:7).

Further, these new claims will be narrower in scope.  Plaintiff is estopped from obtaining claims that are "not patentably distinct" from the claims cancelled by the PTAB (37 C.F.R. § 42.73(d)(3)(i)), and Plaintiff cannot at this late date *broaden* the claims via the Reissue Applications. 35 U.S.C. § 251(d).  Plaintiff stated under penalty of perjury that it filed the Reissue Applications to change the claims' scope (*see* Ex. 11 at 1; Ex. 12 at 1), and it even explained that its Reissue Applications amended the claims to overcome the prior art in the IPR proceedings—in other words, to *narrow* the scope of the claims (*see* Ex. 13 at 14; Ex. 14 at 21).  Plaintiff also admitted at the case management conference that the Reissue Applications would *narrow* the claims.  Ex. 15 at 9.  Plaintiff filed narrowing amendments for each and every claim with its Reissue Applications.[13]  By injecting additional limitations into these claims and generating additional prosecution history (and, with it, additional instances of prosecution history disclaimer and estoppel), Plaintiff is only increasing the number of issues that the Court would have to determine if any patents ever actually issue from the Reissue Applications.

Contrary to Plaintiff's argument (*see* Docket No. 205 at 1:7–12), the Reissue Applications are not part of the "relevant review proceedings" from the 2015 stay order.  The "relevant review

---

[13] Where Plaintiff amended independent claims, those amendments also apply to dependent claims that were not otherwise amended.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST
TO MAINTAIN STAY OR FOR LEAVE TO AMEND                                    CASE NO. 3:14-CV-03348-EMC

proceedings" were *the IPRs*, not the Reissue Applications that Plaintiff filed more than three years later.  Because the new claims will be narrower, the Reissue Applications will not decide issues related to any patent claims that could still be at issue.

        c.      *Factor 3: A stay would unduly prejudice Defendants and would not prejudice Plaintiff, which also weighs against a stay*

Patent applications pending before this examiner take, on average, 2.5 years from the time they are filed to the time they issue.  *See* Ex. 18 at 2.  Plaintiff filed the Reissue Applications at the end of June—any patents would normally issue around *December 2020*.  However, it may take longer considering Plaintiff has submitted what appears to be at least 350 prior art references constituting over 14,500 pages.  *See* Ex. 9 & 10.  During this unknown amount of time, Defendants will incur costs associated with keeping these cases on the books.  Additionally, because the scope of any future claims is unknown, Defendants incur risks from willfulness allegations in connection with the research, development, and sale of their products.

On the other hand, denying a further stay will not prejudice Plaintiff.  As noted above, any claims that could actually issue from the Reissue Applications will be *narrower* in scope.  Because the claims will have a different, narrower scope, the date on which Plaintiff filed the *present* case is irrelevant to determining any damages from any future patents based on the Reissue Applications.  Plaintiff can only obtain damages from *the date on which the PTO issues new patents from the Reissue Applications*.  *See Seattle Box Co.*, 731 F.2d at 828 (citing 35 U.S.C. § 252).

Accordingly, there is no reason for the Court to leave this case on its docket.  If the PTO issues new patents based on the Reissue Applications, the remaining claims from the current patents are "dead," and the damages period for any new claims will begin when the new patents issue.  *See Seattle Box Co.*, 731 F.2d at 828 (citing 35 U.S.C. § 252).  The issuance of the new patents will render the filing date of these cases irrelevant.  *Id.*

**C.**     **The Court should dismiss these cases with prejudice**

Rather than giving Plaintiff the potential opportunity to file new cases asserting patent claims that it walked away from five years ago, the Court should dismiss the entirety of the

Asserted Patents with prejudice for failure to prosecute under Rule 41(b), or otherwise enter final judgment.

    1. <u>Plaintiff has failed to prosecute the remaining claims in the Asserted Patents</u>

   "If the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction . . . —operates as an adjudication on the merits." FRCP 41(b).  Courts in this district may dismiss an action or claim for failure to prosecute if the plaintiff fails to comply with the Patent Local Rules.  *See Aircraft Tech. Publishers v. Avantext, Inc.*, No. C 07-4154 SBA, 2009 WL 3833545, at *2 (N.D. Cal. Nov. 16, 2009).

   Plaintiff has failed to prosecute the unasserted claims.  As described above, it could have asserted these claims with its original contentions or amended thereafter.  Defendants served technical documents under Patent L.R. 3-4 by November 16 2014, which was the last date on which Plaintiff could have received previously unknown information about Defendants' products.  By deciding not to assert the unasserted claims at the beginning of the case or—at the very latest—shortly after these final productions, Plaintiff made a conscious decision not to prosecute these claims.

   Dismissal under these circumstances is appropriate.  *See Magna Elecs., Inc. v. TRW Automotive Holdings Corp.*, No. 1:12-cv-654, 2015 WL 11422304 (W.D. Mich. Nov. 23, 2015).  In *Magna Electronics*, the plaintiff was ordered to reduce its asserted claims.  The plaintiff did so, and the court dismissed the unasserted claims for failure to prosecute.  The court noted in *Magna Electronics* that Plaintiff had "refused to file a motion or adding patents and claims on the basis that those were 'unique,'" despite having the opportunity to do so.  *Id.*, at *3.  Here, Plaintiff failed to comply with the Court's local patent rules and make a timely showing of good cause to add the unasserted claims.  In *Magna Electronics*, the court noted that the defendant "would face far more prejudice than [the plaintiff] if the Court dismissed the claims without prejudice[]" because it would allow the plaintiff to "file a new lawsuit on a slew of claims and restarting the process anew (including a new discovery period)."  *Id.*, at *3.  The same result would happen if the Court did

21

not dismiss for failure to prosecute in this case.  Finally, in *Magna Electronics*, the plaintiff "had ample notice that dismissal with prejudice was a possibility."  *Id.*, at *4.  Here, the local patent rules informed Plaintiff exactly what it needed to do to timely assert the unasserted claims.  *See* Patent L.R. 3-6.  The Court's Civil Standing Order warns that failure to comply with these rules "may be deemed sufficient grounds for . . . . dismissal, entry of default judgment, or other appropriate sanctions[]" (*see* Docket No. 88, ¶ 1), and the Court warned Plaintiff at the December 18, 2014 case management conference that Plaintiff would have to comply with the Court's local patent rules to amend its infringement contentions (Docket No. 148 at 50:20–51:8). Plaintiff failed to invoke any of these procedures for over four years.  The Court also warned Plaintiff at the January 19 case management conference that it wanted Plaintiff to explain "how different" the proposed amendment is, whether the proposed amendment could "have been brought earlier," "why it wasn't brought earlier," and "how much more of a burden" it would be on the parties.  Ex. 15 at 17:3–7 (emphasis added).  Yet, Plaintiff failed to make any of these showings in its motion to amend its infringement contentions.

### 2.    The failure to prosecute factors support dismissal with prejudice

To dismiss a case under Rule 41(b), courts must "consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring deposition of cases on their merits and (5) the availability of less drastic sanctions."[14] *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (citation omitted).  Dismissal is appropriate where "at least four factors support dismissal, . . . or where at least three factors 'strongly' support dismissal."  *Id.* (internal quotation marks omitted) (citation omitted).  Plaintiff's *five-year delay* in asserting the unasserted claims is unreasonable.  Four of the five failure to prosecute factors strongly support dismissing

---

[14] These factors are less burdensome to meet than the factors used in *Magna Electronics* (applying the Sixth Circuit's factors), which analyzed the following factors to dismiss for failure to prosecute: "'(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.'"  *Magna Elecs., Inc.*, 2015 WL 11422304, at *2 (citations omitted).

22

1   the unasserted claims with prejudice.

2   *First*, the public's interest in expeditious resolution of litigation strongly supports dismissal

3   with prejudice.  Plaintiff brought this case over five years ago, and has provided no argument or

4   facts demonstrating that it was unable to assert the unasserted claims when it filed this lawsuit or

5   at earlier stages of this case (such as when Defendants completed their technical document

6   productions).  Infringement contentions "are part of the deliberative process imposed by the Patent

7   Rules to ensure the orderly administration of patent cases," and Plaintiff's failure to timely amend

8   them "directly undermines the Court's ability to ensure the expeditious and efficient

9   administration of justice."  *Cf. Aircraft Technical Publishers*, 2009 WL 3833545, at *3 (discussing

10  invalidity contentions) (citing *O2 Micro Int'l Ltd.*, 467 F.3d at 1365–66 (additional citation

11  omitted)).

12  *Second*, the Court's need to manage its docket strongly supports dismissal with prejudice

13  for similar reasons.  Plaintiff's unexplained five-year delay has "caused 'the action to come to a

14  complete halt' and . . . allowed the 'Plaintiff[] to control the pace of the docket rather than the

15  Court.'"  *Yourish*, 191 F.3d at 990 (discussing months of delay).  Had Plaintiff diligently moved to

16  amend, there would likely be nothing further to litigate:  Defendants would have known to include

17  the unasserted claims in their IPR petitions, and the PTAB would have cancelled them.

18  Alternatively, the parties could have been litigating these claims years ago in parallel with the

19  PTAB proceedings.  Plaintiff's complete lack of diligence has caused this case to needlessly linger

20  on the Court's docket.

21  *Third*, the risk of prejudice to Defendants strongly supports dismissal with prejudice.  As

22  discussed above with respect to Plaintiff's request to continue the stay, Defendants are prejudiced

23  because they prepared their IPR petitions based on Plaintiff's Asserted Claims.  *Grecia*, 2018 WL

24  6523983, at *3 (finding the defendant prejudiced because it "relied upon plaintiff's representations

25  regarding his alleged claims" in connection with parallel litigation).  Defendants can no longer file

26  IPR petitions against the unasserted claims, and have not been able to do so beginning in February

27  2015.  Further, Plaintiff could argue that Defendants lost the ability to use prior art in this

28  litigation that it could have used in the IPRs, even for the claims that Defendants did not challenge

23

in the IPRs.  *See* 35 U.S.C. § 315(e)(2); *Douglas Dynamics, LLC*, 2017 WL 1382556, at *5.  Even if Defendants could file new IPR petitions, the costs and fees associated with preparing and filing brand new petitions—and litigating those petitions to final written decisions—would be significant.

*Fourth*, "[a]lthough there is indeed a policy favoring disposition on the merits, it is the responsibility of the moving party to move towards that disposition at a reasonable pace, and to refrain from dilatory and evasive tactics." *Aircraft Technical Publishers*, 2009 WL 3833545, at *4 (quoting *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991)).  There is nothing reasonable about requesting leave, without justification, to assert previously unasserted patent claims five years into a lawsuit.  Submitting such a request only after the cancellation of all the original asserted claims is both dilatory and evasive.  *See Trans Video Elecs., Ltd.*, 278 F.R.D. at 510 (finding that a patent owner's motion to assert new claims was filed in bad faith, where the patent owner filed the motion only when it was apparent that its asserted claims would be invalidated on summary judgment).  Accordingly, "the public policy favoring resolution of disputes on their merits does not outweigh Plaintiff's failure to prosecute this case." *Bush v. Anton*, No. C 08-3459 JF (RS), 2009 WL 189041, at *1 (N.D. Cal. Jan. 23, 2009).

*Fifth*, no less drastic sanctions are available.  Plaintiff was required under the Court's Local Patent Rules to demonstrate good cause to amend its infringement contentions to add the unasserted claims.  Despite being given ample opportunity to do so—and even receiving explicit instructions about how to do so—Plaintiff failed to demonstrate good cause.  If the Court lets the unasserted claims into the case, it would render meaningless the Court's Local Patent Rules and prejudice Defendants.  If the Court dismisses the unasserted claims without prejudice, Plaintiff may likely file new complaints asserting these claims—permitting Plaintiff to evade the requirements of, and consequences for failing to comply with, the Court's Local Patent Rules.[15]

---

[15] Such a result would also allow Plaintiff to circumvent the PTAB's IPR process, considering accused infringers often file IPRs targeted to the claims asserted in litigation, in an effort to meet page limits and control costs.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST
TO MAINTAIN STAY OR FOR LEAVE TO AMEND

CASE NO. 3:14-CV-03348-EMC

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court deny Plaintiff's requests to maintain the stay and to amend its infringement contentions to include previously unasserted claims.  Defendants also respectfully requests that the Court dismiss with prejudice the unasserted claims under Rule 41(b) for failure to prosecute and enter final judgment in favor of Defendants.

Respectfully submitted,

DATED:  February 21, 2019

BAKER BOTTS L.L.P.

By: /s/   Wayne O. Stacy
WAYNE O. STACY (SBN 314579)
wayne.stacy@bakerbotts.com
SARAH J. GUSKE (SBN 232467)
sarah.guske@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3600
San Francisco, California  94111
Telephone:+1-415-291-6200
Facsimile: +1-415-291-6300

JOHN F. GAUSTAD (SBN 279893)
john.gaustad@bakerbotts.com
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304

Attorneys for Defendant
CISCO SYSTEMS, INC.

By: /s/   Nathaniel T. Browand
Nathaniel T. Browand*
nbrowand@milbank.com
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Tel: (212) 530-5000
Fax: (212) 530-5219

Mark C. Scarsi (SBN 183926)
mscarsi@milbank.com
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Tel: (424) 386-4000
Fax: (213) 629-5063
* admitted pro hac vice

Attorneys for Defendant
Fujitsu Network Communications, Inc.

By: /s/   J. Pieter Van Es
BANNER & WITCOFF, LTD.
J. PIETER VAN ES (CBN 250524)
pvanes@bannerwitcoff.com

26

THOMAS K. PRATT*
tpratt@bannerwitcoff.com
TIMOTHY J. RECHTIEN*
trechtien@bannerwitcoff.com
10 South Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

PILLSBURY WINTHROP SHAW
PITTMAN LLP
COLIN T. KEMP (SBN 215408)
colin.kemp@pillsburylaw.com
STEPHEN E. BERGE (SBN 274329)
stephen.berge@pillsburylaw.com
4 Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

* admitted pro hac vice
**Attorneys for Defendants**
**Coriant Operations, Inc. (formerly Tellabs**
**Operations, Inc.) and Coriant (USA) Inc.**


By: /s/  Clement Naples
Matthew Moore*
E-mail: matthew.moore@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
202-637-2200

Clement Naples*
E-mail: clement.naples@lw.com
LATHAM & WATKINS LLP
885 Third Ave
New York, NY 10022
212-906-1200
* pro hac vice

**Attorneys for Defendant**
**Ciena Corporation**

27